Evelyn V. Keyes, Justice *679 Appellant and cross-appellee, Cypress Creek EMS (CCEMS), filed suit against appellees and cross-appellants, Wayne Dolcefino and Wayne Dolcefino Consulting (collectively, Dolcefino), alleging that counsel for CCEMS had accidentally mailed certain confidential documents to Dolcefino and asserting a cause of action for conversion against Dolcefino. CCEMS also sought an injunction preventing Dolcefino from disclosing any confidential information that he received in the accidentally-disclosed documents and requiring him to return the documents. Dolcefino denied ever receiving the documents and subsequently moved for dismissal of CCEMS's claims pursuant to Texas Rule of Civil Procedure 91a and for summary judgment on both the conversion claim and the request for a permanent injunction. Dolcefino also sought sanctions against CCEMS pursuant to Texas Rule of Civil Procedure 13 and Civil Practice and Remedies Code Chapter 10.
The trial court initially granted Dolcefino's Rule 91a motion to dismiss but later vacated that order and granted summary judgment in favor of Dolcefino on CCEMS's conversion claim and request for a permanent injunction. The trial court denied Dolcefino's request for sanctions.
In three issues, CCEMS argues that: (1) the trial court erred in granting summary judgment in favor of Dolcefino on CCEMS's conversion claim, in denying CCEMS a continuance for further discovery, and in denying its motion to compel Dolcefino's response to certain deposition questions; (2) the trial court erred in granting summary judgment in favor of Dolcefino on CCEMS's permanent injunction request; and (3) as a prevailing party on a Rule 91a motion to dismiss, CCEMS was entitled to reasonable and necessary attorney's fees, and the trial court's refusal to award it the full amount it had requested was erroneous.
Dolcefino asserts in his cross-appeal that the trial court abused its discretion in overruling his motion for sanctions pursuant to Rule 13 and Civil Practice and Remedies Code Chapter 10 and in denying his motion for reconsideration of the sanctions ruling by operation of law.
We affirm.
Background
CCEMS is a Texas nonprofit corporation doing business as a non-emergency ambulance service in Harris County. CCEMS also has a "tactical medical team" that is comprised of commissioned peace officers who also have training as emergency medical technicians and who provide emergency medical care in situations that would be unsafe for traditional EMTs. Dolcefino was hired by an unidentified third party to investigate CCEMS, and, specifically relevant here, he requested documents from the organization related to the tactical medical team. On March 30, 2015, Dolcefino sent a written request pursuant to the Texas Public Information Act *680 (PIA)[1] seeking "documents detailing the use of any CCEMS credit card since June 1, 2015,[2] including the statement and all receipts"; "documents detailing expense reports, or any reimbursements from Brad England [a CCEMS employee] since June 1, 2015"; "documents detailing all expenses of the [CCEMS] tactical medical team since January 1, 2013, including ... offense reports, documentation of involvement in any law enforcement operations, including, but not limited to any dispatch records request[ing] CCEMS tactical assistance"; and "documents detailing the payroll of the tactical team members." The letter also stated, following the specific request for expense reports for England, "You may redact information made confidential under state law."
In response to this request, CCEMS sought guidance from the Texas Attorney General regarding whether an exemption from its duty to respond to PIA requests applied to certain documents requested by Dolcefino, as provided for in the PIA.[3] CCEMS's counsel sent a letter setting out its argument for why the exemption applied to it under the circumstances, and it attached un-redacted copies of some of the information relevant to Dolcefino's request so that the Attorney General could review them. The statute also required that CCEMS notify Dolcefino. On April 20, 2015, CCEMS notified Dolcefino by mailing him a copy of the letter it had sent to the Attorney General. However, CCEMS's counsel soon came to believe that it had accidentally sent copies of the un-redacted sample documents it had provided to the Attorney General's office along with the copy of the letter it had sent.
After realizing what had occurred, CCEMS sought a temporary restraining order (TRO) on April 23, 2015, which the trial court granted. The trial court directed that Dolcefino return any documents he had received from CCEMS's attorney, not open any mail from CCEMS's attorney, and not discuss anything that he had received. On April 27, 2015, acting through his attorney, Dolcefino returned unopened a package he had received from CCEMS's counsel; however, CCEMS determined that this was not the package containing the confidential information it believed it had inadvertently sent him.
CCEMS filed the underlying suit on May 14, 2015, alleging a cause of action against Dolcefino for conversion of the documents and seeking a TRO, a temporary injunction, and a permanent injunction prohibiting Dolcefino from using or keeping the documents. Subsequently, on May 18, 2015, the trial court held a temporary injunction hearing. Kimberly Jessett, an attorney for CCEMS, testified that she prepared the letter to the Attorney General's office and attached sample documents containing "information with respect to when certain investigations were going to take place, persons of interest, people who were potentially going to be charged, their photos, their addresses," and other similar information. Jessett further testified that she sent a copy of that letter to Dolcefino at his business address in Katy, Texas-an *681 address to which her firm had directed numerous previous communications. Jessett testified that, a few days later, she came to understand that un-redacted documents had been sent to Dolcefino along with the letter. She stated that she was preparing the confidential documents by redacting them so that they could be send to Dolcefino, but when she asked her assistant to send them to Dolcefino, the assistant informed her "that she had already sent a package out to Mr. Dolcefino." They both realized that they must have sent Dolcefino copies of the un-redacted documents.
Jessett further testified that she had a phone conversation with Dolcefino on April 23 after the underlying suit had been filed and the TRO entered, and after he received emailed notice of the TRO. According to Jessett, Dolcefino "said that he didn't know what I was talking about. He didn't know what the package was. He had not received it yet." Dolcefino told Jessett that he did not check the mail at the Katy address very often. He also represented that he would return the package to the law firm if he received it. Jessett also testified that Dolcefino initially seemed cooperative, but, over the course of the conversation, "his tone changed" and he ended the conversation by informing Jessett that he was going to contact his attorney.
Jessett testified that she had no firsthand knowledge regarding whether Dolcefino had the package in his possession, that she was not aware of any occasion on which Dolcefino had published or otherwise disseminated the information contained in the package, and that she had no knowledge of Dolcefino's publishing information that could have been considered confidential or privileged in the past. Jessett's administrative assistant also testified that she addressed the envelope containing the letter and confidential documents, put the correct postage on the envelope, and left the envelope in the mail bin so that it would be sent to Dolcefino. However, the assistant also testified that she had no personal knowledge regarding whether Dolcefino had actually obtained the package.
Dolcefino also testified at the hearing. He denied receiving the package, and he stated that he did not have it or any of the relevant documents in his possession. Dolcefino testified that, in addition to the post office box in Katy to which CCEMS's counsel mailed the package, he had moved into an office in Houston where he received mail. In February 2015, he began forwarding mail from the Katy address to his office in Houston. Dolcefino stated that he never received the package at his Houston office either.
Following the temporary injunction hearing, the trial court signed an "Agreed Confidentiality Order," in which the parties agreed to certain findings, signed by the trial court,[4] including findings that counsel for CCEMS had "inadvertently" sent the package containing the confidential documents to Dolcefino on April 20, 2015, by regular mail properly addressed to Dolcefino; that Dolcefino had not received the package and was not responsible for the mailing of the package; and that Dolcefino had "not contributed in any manner to any threatened harm complained of by CCEMS," even though there was still an "imminent harm caused by the inadvertent disclosure of alleged ongoing law enforcement activities contained in the letter package and the potential to cause *682 irreparable injury to CCEMS." Dolcefino agreed not to open the package if he received it in the future and to return it to CCEMS's attorney.
Dolcefino then answered CCEMS's suit by filing a general denial. He also filed a motion to dismiss pursuant to Rule of 91a, and he filed a counterclaim for sanctions arguing that CCEMS's suit was "groundless" and "brought in bad faith or with a dishonest and/or malicious purpose."
The trial court originally granted the Rule 91a motion to dismiss and awarded Dolcefino $500 in attorney's fees. However, CCEMS moved to vacate the Rule 91a dismissal arguing, among other things, that the trial court's granting of the motion had been untimely. On October 26, 2015, Dolcefino opposed the motion to vacate and, in the alternative, moved for traditional and no-evidence summary judgment on CCEMS's conversion claim. Dolcefino argued that, as a matter of law, the purportedly confidential documents were not the type of personal property that could be the subject of a conversion claim. He also argued that CCEMS had no evidence to support the elements of a conversion claim, including that it had no evidence that he had "wrongfully exercised dominion or control over the property."
CCEMS moved for a continuance of the submission and hearing on Dolcefino's motion for summary judgment, arguing that it needed additional time to depose Dolcefino and to depose a postal service employee. Subject to this motion for continuance, CCEMS also responded to Dolcefino's summary judgment motion. The following day, CCEMS moved for attorney's fees pursuant to Rule 91a, in anticipation "that the Court will correctly vacate its previous dismissal order." CCEMS asserted that, following the trial court's decision to vacate its prior ruling, it would then be a prevailing party under the rule and was thus entitled to attorney's fees. It later supplemented its request, seeking a total of $23,897.50 in attorney's fees pursuant to Rule 91a, and it supported its request with affidavits and billing records.
On December 9, 2015, the trial court vacated its previous Rule 91a dismissal and, in the same order, denied Dolcefino's 91a motion to dismiss and continued the consideration of CCEMS's motion for attorney's fees to allow Dolcefino an opportunity to controvert CCEMS's attorney's fees evidence. Dolcefino responded by opposing CCEMS's request for attorney's fees, asserting various arguments that CCEMS was not entitled to any fees, that the fee request was "unconscionable," and that the amount requested was unreasonable and unnecessary.
The trial court also granted CCEMS's motion to continue consideration of Dolcefino's motion for summary judgment, specifically stating that it was granting a continuance to allow CCEMS an opportunity to depose Dolcefino and a postal worker.
CCEMS deposed Dolcefino. Among other topics, Dolcefino answered questions regarding whether he had received the package in question, the places where he was able to receive mail and his forwarding arrangement for mail sent to his old address in Katy, people who had access to the mailbox where CCEMS sent the package in question, and his intention to return the package if it were ever received. However, on the advice of counsel, he refused to answer other questions regarding issues such as the name of the person who hired him to investigate CCEMS and other mail that he had received in the past at the address where CCEMS had sent the documents.
After Dolcefino's deposition, CCEMS moved a second time for a continuance of submission of Dolcefino's motion for summary *683 judgment on the conversion claim, and it also moved to compel deposition testimony from Dolcefino. In its motion for continuance, CCEMS argued that "Dolcefino refused to answer most of the questions posed by counsel for CCEMS, necessitating early suspension of the deposition and the filing of this motion." CCEMS asserted that Dolcefino's counsel had announced near the beginning of the deposition that it would be "limited to the terms of the Public Information Act." CCEMS complained that Dolcefino's counsel then instructed him not to answer multiple questions, identifying questions such as: "[W]hen you're retained to investigate for a client, do you typically charge by the hour?"; "[I]n the investigation that you're doing of [CCEMS], were you retained by someone-I'm not asking who-retained by someone to investigate [CCEMS]?"; and "Were you [sending PIA requests] on behalf of a third person and for compensation?" CCEMS complained that Dolcefino refused to answer questions regarding other mail that CCEMS had sent to Dolcefino at the Katy address and that Dolcefino had apparently received, questions regarding Dolcefino's system for following up on PIA requests, and questions related to CCEMS's efforts to discover circumstantial evidence that could establish that Dolcefino had received and improperly retained the disputed package.
The trial court denied this second motion for continuance, and it granted summary judgment in favor of Dolcefino on CCEMS's conversion claim. The trial court also awarded CCEMS $850 in attorney's fees in connection with the Rule 91a motion.
Dolcefino then moved for summary judgment on CCEMS's request for a permanent injunction. He argued, among other grounds, that because the trial court had granted summary judgment in favor of Dolcefino on the conversion claim, CCEMS could not establish the existence of a wrongful act-an essential element of CCEMS's request for a permanent injunction. The trial court granted summary judgment in favor of Dolcefino on this ground.
The trial court held a bench trial on Dolcefino's request for sanctions. Dolcefino offered evidence consisting of the parties' pleadings and other relevant documents. Counsel for CCEMS, Andrew McKinney, testified regarding the circumstances surrounding CCEMS's decision to file the underlying lawsuit, stating that he had a good faith basis for filing the suit and that CCEMS had a good faith argument for the extension or modification of existing law on its claims. The trial court ultimately denied Dolcefino's request for sanctions.
CCEMS's Appeal
Summary Judgment
In its first issue, CCEMS argues that the trial court erred in granting summary judgment in favor of Dolcefino on CCEMS's conversion claim and that the trial court erred in denying CCEMS's motion for continuance of the summary judgment hearing. In its second issue, CCEMS argues that the trial court erred in denying its request for a permanent injunction based on Dolcefino's motion for summary judgment.
A. Standard of Review
We review de novo a trial court's ruling on a summary judgment. Travelers Ins. Co. v. Joachim , 315 S.W.3d 860, 862 (Tex. 2010). When, as here, a party has filed both a traditional and a no-evidence summary judgment motion, we first review the trial court's summary judgment ruling under the no-evidence standard of Texas Rule of Civil Procedure 166a(i). See *684 Ford Motor Co. v. Ridgway , 135 S.W.3d 598, 600 (Tex. 2004) ; Essex Crane Rental Corp. v. Carter , 371 S.W.3d 366, 375 (Tex. App.-Houston [1st Dist.] 2012, pet denied).
After an adequate time for discovery, the party without the burden of proof may move for a no-evidence summary judgment on the basis that there is no evidence to support an essential element of the non-movant's claim. TEX. R. CIV. P . 166a(i) ; Hamilton v. Wilson , 249 S.W.3d 425, 426 (Tex. 2008). The trial court must grant the no-evidence summary judgment unless the non-movant produces competent summary judgment evidence raising a genuine issue of material fact on the challenged elements. TEX. R. CIV. P . 166a(i) ; Hamilton , 249 S.W.3d at 426. We apply the legal-sufficiency standard of review to no-evidence summary judgment motions. See Mack Trucks, Inc. v. Tamez , 206 S.W.3d 572, 581-82 (Tex. 2006) ; City of Keller v. Wilson , 168 S.W.3d 802, 823, 827 (Tex. 2005). Applying that standard, a no-evidence point will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. City of Keller , 168 S.W.3d at 810 ; King Ranch, Inc. v. Chapman , 118 S.W.3d 742, 751 (Tex. 2003).
To defeat a no-evidence motion, the non-movant must produce at least a scintilla of evidence raising a genuine issue of material fact as to the challenged elements. Lightning Oil Co. v. Anadarko E & P Onshore, LLC , 520 S.W.3d 39, 45 (Tex. 2017). "More than a scintilla of evidence exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.' " Essex Crane , 371 S.W.3d at 376 (quoting Merrell Dow Pharms., Inc. v. Havner , 953 S.W.2d 706, 711 (Tex. 1997) ). A non-moving party is not required to marshal all of its proof but must present countervailing evidence that raises a genuine fact issue on the challenged elements. Sw. Elec. Power Co. v. Grant , 73 S.W.3d 211, 215 (Tex. 2002) (citing TEX. R. CIV. P. 166a ). We consider the evidence in the light most favorable to the non-movant and indulge every reasonable inference from the evidence in the non-movant's favor. Lightning Oil , 520 S.W.3d at 45.
When, as here, the summary judgment order does not specify the grounds on which it was granted, the appealing party must demonstrate that none of the proposed grounds are sufficient to support the judgment. West v. SMG , 318 S.W.3d 430, 437 (Tex. App.-Houston [1st Dist.] 2010, no pet.). We will affirm a summary judgment ruling if any of the grounds asserted in the motion are meritorious. Lightning Oil , 520 S.W.3d at 45.
B. Summary Judgment on Conversion
Conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. Freezia v. IS Storage Venture, LLC , 474 S.W.3d 379, 386 (Tex. App.-Houston [14th Dist.] 2015, no pet.) (citing Waisath v. Lack's Stores, Inc. , 474 S.W.2d 444, 446 (Tex. 1971) ). The elements of a conversion claim are (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. Id. at 386-87 ;
*685 Stroud Prod., L.L.C. v. Hosford , 405 S.W.3d 794, 811 (Tex. App.-Houston [1st Dist.] 2013, pet. denied) (citing Khorshid, Inc. v. Christian , 257 S.W.3d 748, 759 (Tex. App.-Dallas 2008, no pet.) ).
To be held liable, a conversion defendant must intend to assert some right in the property. Robinson v. Nat'l Autotech, Inc. , 117 S.W.3d 37, 40 (Tex. App.-Dallas 2003, pet. denied) ; see also Dolenz v. Nat'l Bank of Tex. at Fort Worth , 649 S.W.2d 368, 370 (Tex. App.-Fort Worth 1983, writ ref'd n.r.e.) ("To constitute a conversion of property, there must be some repudiation of the owner's right or an exercise of dominion over the property, wrongfully and in denial of or inconsistent with that right; or there must be an illegal assumption of ownership."). "However, that intent need not be an intent to assert a right of ownership or title; it can be an intent to assert the right of possession." Robinson , 117 S.W.3d at 40. Stated another way, an act of conversion does not have to be an actual manual taking but merely an act that is such an active interference with the owner's right of property or control as to deprive him of its free use and enjoyment. Pierson v. GFH Fin. Servs. Corp. , 829 S.W.2d 311, 314 (Tex. App.-Austin 1992, no writ) (citing Waisath , 474 S.W.2d at 447 ).
To recover for conversion, a plaintiff must also prove damages that are the proximate result of the defendant's conversion. MJS & Assocs., L.L.C. v. Master , 501 S.W.3d 751, 757 (Tex. App.-Tyler 2016, pet. denied) (citing United Mobile Networks, L.P. v. Deaton , 939 S.W.2d 146, 147-48 (Tex. 1997) (per curiam) ). "Generally, the measure of damages for conversion is the fair market value of the property at the time and place of the conversion." Deaton , 939 S.W.2d 146, 147-48.
Here, CCEMS asserts that Dolcefino converted personal property-in the form of copies of confidential documents that CCEMS's attorneys inadvertently mailed to Dolcefino-when it requested that he return the documents and he refused and wrongfully retained them. Dolcefino moved for summary judgment, arguing in part that CCEMS had no evidence of any element of its conversion claim. He argued that CCEMS had no evidence that he had "wrongfully exercised dominion or control over the property."
The summary judgment evidence indicated that CCEMS sent the documents in question to Dolcefino by regular mail. There is no evidence that Dolcefino actually received the package, and there is no evidence that Dolcefino ever had possession of the documents. CCEMS has presented no evidence that Dolcefino has asserted some right over the documents. See Robinson , 117 S.W.3d at 40. CCEMS has presented no evidence that Dolcefino engaged in any action that interfered with CCEMS's right to the property or control over the property as to deprive CCEMS of its free use and enjoyment. See Pierson , 829 S.W.2d at 314. Thus, CCEMS cannot establish that Dolcefino engaged in the unauthorized and unlawful assumption and exercise of dominion and control over the documents to the exclusion of, or inconsistent with, CCEMS's rights. See Freezia , 474 S.W.3d at 386.
CCEMS argues that it has raised a fact issue on this element. It argues that summary judgment evidence established that the "documents were properly addressed, sealed, and mailed to Dolcefino's business address via the U.S. Postal Service" and that this "raised a presumption that he received them." CCEMS further asserts that the presumption of receipt at least raises a fact question regarding whether Dolcefino actually received the documents *686 and whether he has retained them improperly.
CCEMS cites Texaco, Inc v. Phan , 137 S.W.3d 763 (Tex. App.-Houston [1st Dist.] 2004, no pet.), to support its claim that the presumption of receipt raises a fact question here. In that case, Texaco challenged the trial court's default judgment against it and its finding regarding when deadlines for appealing from the default judgment began to run, arguing in part that "the evidence was legally and factually insufficient to support the trial court's finding under [Rule of Civil Procedure] 306a that it received actual knowledge of the default judgment on" a particular date. Id. at 766. In discussing the evidence regarding when Texaco received notice of the default judgment, this Court held that "[d]irect testimony that a letter was properly addressed, stamped, and mailed to the addressee raised a presumption that the letter was received by the addressee in due course." Id. at 767. We further held, "The mere denial of receipt is sufficient to rebut the presumption," but "the denial is not conclusive and merely presents a fact issue for the factfinder." Id. We stated, "The presumption of receipt is overcome conclusively only when 'the evidence tending to support the contrary inference is conclusive, or so clear, positive, and disinterested that it would be unreasonable not to give effect to it as conclusive.' " Id. at 767-68 (quoting Employers' Nat. Life Ins. Co. of Dallas, Tex. v. Willits , 436 S.W.2d 918, 921 (Tex. Civ. App.-Amarillo 1968, writ ref'd n.r.e.) ). This Court then concluded that the trial court properly considered the evidence-both the evidence giving rise to the presumption and Texaco's evidence rebutting it-in making a fact-finding regarding when Texaco received notice of the default judgment for purposes of its appellate deadlines. Id. at 768.
The present case is materially different from Texaco and similar cases cited by CCEMS. Here, the issue is not whether or when Dolcefino received some notice required by law to be sent to him-as was the case in Texaco -but rather whether there is any evidence that Dolcefino engaged in the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another to the exclusion of or inconsistent with the owner's rights. See Freezia , 474 S.W.3d at 386 (describing tort of conversion and setting out elements). CCEMS has not identified any case in which the presumption of receipt was considered as evidence establishing intentional, tortious conduct such as conversion, nor have we found any. CCEMS is essentially arguing that its own erroneous conduct-the inadvertent mailing of confidential documents-can be imputed as tortious conduct on Dolcefino's part. Neither the law supporting a presumption of receipt nor the law of conversion justifies such a conclusion.
At most, the evidence that CCEMS mailed the documents to Dolcefino raises a fact question regarding whether he received the documents in the mail. However, his mere receipt of the documents is no evidence that Dolcefino himself engaged in an act of conversion, and CCEMS has presented no evidence that Dolcefino improperly retained the documents or that he has used the documents in a way that was inconsistent with CCEMS's rights. See ids="6835419" index="39" url="https://cite.case.law/sw3d/474/379/#p386">id. CCEMS asserts that Dolcefino is untrustworthy and could be lying about never having received the package, but such assertions are insufficient to raise a genuine issue of material fact regarding whether Dolcefino "wrongfully exercised dominion or control over the property" after CCEMS mailed the package to him. See Ridgway , 135 S.W.3d at 601 ("To raise a genuine issue of material fact ... the evidence *687 must transcend mere suspicion. Evidence that is so slight as to make any inference a guess is in legal effect no evidence."); Kindred v. Con/Chem, Inc. , 650 S.W.2d 61, 63 (Tex. 1983) ("When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence."); Fabian v. Cantwell , No. 03-16-00712-CV, 2017 WL 1833496, at *2 (Tex. App.-Austin May 3, 2017, no pet.) (mem. op.) ("The circumstantial evidence supporting the allegation that Cantwell exercised dominion and control over Fabian's property-that the mobile home was located on his property, that he and Fabian were involved in a dispute about unpaid rent, and that the property was taken by someone-simply does not exceed a scintilla and could lead to only a guess about who took the property.").
CCEMS failed to raise a genuine issue of material fact on an essential element of its conversion claim in response to Dolcefino's no-evidence motion for summary judgment, and, thus, the trial court could properly have granted summary judgment on this ground. See TEX. R. CIV. P . 166a(i) ; Hamilton , 249 S.W.3d at 426. Accordingly, we overrule CCEMS's challenge to the trial court's summary judgment ruling on its conversion claim. See Lightning Oil , 520 S.W.3d at 45 (holding that courts will affirm summary judgment ruling if any ground asserted in motion is meritorious).
C. Denial of Motion for Continuance
As part of its first issue, CCEMS also argues that the trial court erred in denying its motion to continue the summary judgment hearing and its motion to compel deposition testimony from Dolcefino.
Under the Rules of Civil Procedure, a trial court may continue a summary judgment hearing if the non-movant shows sufficient cause, such as a need to conduct additional discovery. TEX. R. CIV. P . 166a(g) ; see TEX. R. CIV. P . 251, 252. We review a trial court's ruling on a motion for continuance for an abuse of discretion. Joe v. Two Thirty Nine Joint Venture , 145 S.W.3d 150, 161 (Tex. 2004). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. Id. In determining whether the trial court abused its discretion, we view the evidence in the light most favorable to the trial court's ruling and indulge every presumption in favor of the ruling. Hatteberg v. Hatteberg , 933 S.W.2d 522, 526 (Tex. App.-Houston [1st Dist.] 1994, no writ).
In deciding whether the trial court has abused its discretion in denying a motion for continuance, we examine various factors such as the nature of the case, the length of time the case and motion for summary judgment have been on file, the nature of the evidence needed to controvert a no-evidence motion, the materiality and purpose of the discovery sought, the amount of discovery that has already taken place, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. Joe , 145 S.W.3d at 161 ; Cardenas v. Bilfinger TEPSCO, Inc. , 527 S.W.3d 391, 404 (Tex. App.-Houston [1st Dist.] 2017, no pet.). Generally, it is not an abuse of discretion to deny a motion for continuance where a party has received the 21-days' notice required by Rule of Civil Procedure 166a(c). Cardenas , 527 S.W.3d at 403 ; Carter v. MacFadyen , 93 S.W.3d 307, 310 (Tex. App.-Houston [14th Dist.] 2002, pet. denied).
Likewise, the scope of discovery is generally within the trial court's discretion.
*688 In re CSX Corp. , 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding). When a trial court denies a motion to compel discovery, the ruling is reviewed under an abuse of discretion standard. Johnson v. Davis , 178 S.W.3d 230, 242 (Tex. App.-Houston [14th Dist.] 2005, pet. denied) (citing Cire v. Cummings , 134 S.W.3d 835, 838 (Tex. 2004) ); see Gen. Tire, Inc. v. Kepple , 970 S.W.2d 520, 526 (Tex. 1998) (holding that courts employ abuse of discretion standard to review trial court's discovery rulings). A party is typically entitled to obtain discovery on any matter that is not privileged and is relevant to the subject matter of the pending action and appears to be reasonably calculated to lead to the discovery of admissible evidence. See TEX. R. CIV. P . 192.3(a). If the reviewing court determines there was an abuse of discretion, the court must still determine whether the error probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a) ; see Austin v. Countrywide Homes Loans , 261 S.W.3d 68, 75 (Tex. App.-Houston [1st Dist.] 2008, pet. denied).
CCEMS complains that the trial court erred in denying its second motion for continuance and in denying its motion to compel further deposition testimony from Dolcefino. It argues that because Dolcefino refused to answer many of CCEMS's questions at his deposition, CCEMS was unable to fully defend against Dolcefino's motions for summary judgment.
CCEMS argues, and the transcript of Dolcefino's deposition demonstrates, that Dolcefino refused to answer certain questions asked by CCEMS's counsel. He refused to discuss who retained him to investigate CCEMS or other details regarding his employment by the unidentified client. He also refused to answer questions regarding other mail that CCEMS had sent to Dolcefino at the Katy address and that Dolcefino had apparently received, questions regarding Dolcefino's system for following up on PIA requests, and questions related to CCEMS's efforts to discover circumstantial evidence that could establish that Dolcefino had received and improperly retained the disputed package. However, the record demonstrates that Dolcefino did answer questions regarding the package in question, denying that he ever received it but also stating that he would willingly return it to CCEMS if he ever received it in the future. He testified briefly regarding a package that he received from CCEMS's counsel just after CCEMS filed its request for a temporary injunction in this case and that he returned unopened through his own attorney. He answered questions about his various mailing addresses and the people with access to his mail. He denied that he intended for CCEMS to provide him with any confidential information, and he also testified that he would not use any confidential information that he received from CCEMS.
Because Dolcefino appeared for his deposition and answered questions relevant to CCEMS's conversion claim against him, we cannot say that the trial court abused its discretion in denying CCEMS's motion to compel further deposition testimony. See In re CSX Corp. , 124 S.W.3d at 152. CCEMS had obtained enough discovery to demonstrate that it mailed the documents in question to an established address of Dolcefino's, one where he had received mail in the past. Dolcefino denied receiving the package and answered other questions relating to whether that particular package could have been forwarded to a different address or accessed by someone other than Dolcefino. The trial court could have determined that the questions Dolcefino refused to answer were not reasonably likely to lead to the discovery of admissible evidence relevant to CCEMS's conversion claims.
*689 See TEX. R. CIV. P . 192.3(a). Dolcefino had already denied ever receiving the package in question, and he denied that anyone associated with him had received it. It was unlikely that further questioning of Dolcefino would provide CCEMS with evidence to contradict those statements.
The evidence also demonstrates that the trial court did not abuse its discretion in denying CCEMS's second motion for a continuance. CCEMS filed its petition alleging the conversion claim on May 14, 2015. It based its claim on the fact that it accidentally mailed confidential information to Dolcefino and, based on the contentious history and lack of trust between the parties, it did not believe his representations that he did not receive the package. Dolcefino promptly moved to dismiss CCEMS's claim pursuant to Rule 91a, and he subsequently moved for summary judgment on that claim on October 26, 2015, after CCEMS had sought reconsideration of the trial court's order granting the 91a motion. Dolcefino also provided notice to CCEMS on that same day for a hearing set for November 16, 2015. The trial court granted one continuance on December 9, 2015, allowing CCEMS time to complete additional discovery and notifying CCEMS of the resetting of the motion for summary judgment for written submission on February 29, 2016. CCEMS was allowed to depose Dolcefino regarding his knowledge of the confidential documents and other relevant information. Also, much of the evidence relevant to CCEMS's claims was in CCEMS's hands, because CCEMS was the party that had prepared the documents and mailed them. CCEMS responded to the motion for summary judgment on February 22, 2016, and the trial court granted the summary judgment motion on March 22, 2016.
Thus, considering factors such as the nature of the case, the length of time that the case and the motion for summary judgment had been on file, the nature of the evidence needed to controvert a no-evidence motion, the materiality and purpose of the discovery sought, and the amount of discovery that had already taken place, we conclude that the trial court did not abuse its discretion in concluding that adequate time for discovery had passed. See Joe , 145 S.W.3d at 161 ; Cardenas , 527 S.W.3d at 404. When Dolcefino filed his motion for summary judgment, the case had been on file for more than five months, and CCEMS then received a continuance. The case had been on file for nearly eleven months at the time the trial court granted summary judgment. See Restaurant Teams Int'l, Inc. v. MG Sec. Corp. , 95 S.W.3d 336, 340-41 (Tex. App.-Dallas 2002, no pet.) (holding that "the rules do not mandate a minimum period of time a case must be pending before a motion may be filed, as long as there was adequate time for discovery" and that there was adequate time where case had been on file seven months and motion had been on file twenty-six days before it was granted); Carter , 93 S.W.3d at 311 (affirming no-evidence summary judgment where motion was filed eight months after suit was filed). Moreover, the case was not factually complex. CCEMS was allowed extra time to depose Dolcefino, and it already had relevant evidence regarding its mailing of the confidential documents in its possession at the time it filed the petition. See Carter , 93 S.W.3d at 311 (holding that trial court may presume plaintiff has investigated its own case prior to filing).
Accordingly, we conclude that the trial court did not abuse its discretion in denying CCEMS's motion to compel and motion for continuance.
We overrule CCEMS's first issue.
*690 D. Summary Judgment on Permanent Injunction
In its second issue, CCEMS argues that the trial court erred in granting summary judgment in favor of Dolcefino on CCEMS's application for a permanent injunction.
Following the trial court's granting of summary judgment dismissing CCEMS's conversion claim, Dolcefino moved for summary judgment on CCEMS's application for a permanent injunction. He argued, in part, that CCEMS could not establish its entitlement to a permanent injunction because it could not show the existence of a wrongful act on Dolcefino's part.
Injunctive relief is appropriate upon a showing of the following elements: (1) the existence of a wrongful act, (2) the existence of imminent harm, (3) the existence of irreparable injury, and (4) the absence of an adequate remedy at law. BSG-Spencer Highway Joint Venture, G.P. v. Muniba Enters., Inc. , No. 01-15-01109-CV, 2017 WL 3261365, at *10 (Tex. App.-Houston [1st Dist.] Aug. 1, 2017, no pet.) (citing Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n , 25 S.W.3d 845, 849 (Tex. App.-Houston [14th Dist.] 2000, pet. denied) ); see also Long Canyon Phase II & III Homeowners Assoc., Inc. v. Cashion , 517 S.W.3d 212, 224 (Tex. App.-Austin 2017, no pet.) (setting out elements of permanent injunction).
CCEMS alleged only that Dolcefino had wrongfully retained and failed to return documents that CCEMS sent to him by accident. However, as set out above, the trial court properly concluded that CCEMS had no evidence to support its claim that Dolcefino had exercised improper dominion or control over the documents. CCEMS's pleadings do not contain any other allegations of wrong-doing on Dolcefino's part that would support its application for a permanent injunction. See BSG-Spencer Highway Joint Venture, G.P. , 2017 WL 3261365, at *10 ; Cashion , 517 S.W.3d at 224.
Accordingly, we conclude that the trial court properly granted Dolcefino's motion for summary judgment on this claim. See Lightning Oil , 520 S.W.3d at 45 (holding that courts will affirm summary judgment ruling if any ground asserted in motion is meritorious).
We overrule CCEMS's second issue.
Rule 91a Attorney's Fees
In its third issue, CCEMS argues that the trial court erred in failing to award it the full amount of the attorney's fees it claimed as a prevailing party on Dolcefino's Rule 91a motion to dismiss. On appeal, Dolcefino does not contest CCEMS's claim that it was a prevailing party on his Rule 91a motion to dismiss because the trial court ultimately ruled on Dolcefino's Rule 91a motion in an untimely manner and subsequently granted summary judgment in favor of Dolcefino. Dolcefino argued at trial and on appeal that the amount of attorney's fees sought by CCEMS were unconscionable and were not reasonable or necessary. CCEMS argues that the trial court abused its discretion by awarding it only $850 of the $23,897.50 it requested as a prevailing party under Rule 91a.
A. Standard of Review
Under Texas law, attorney's fees are not recoverable unless specifically provided by contract or statute. Weizhong Zheng v. Vacation Network Inc. , 468 S.W.3d 180, 187 (Tex. App.-Houston [14th Dist.] 2015, pet. denied) (citing MBM Fin. Corp. v. Woodlands Operating Co. , 292 S.W.3d 660, 669 (Tex. 2009) ). Regarding attorney's fees, Rule 91a provides:
*691 Award of Costs and Attorney Fees Required. Except in an action by or against a governmental entity or a public official acting in his or her official capacity or under color of law, the court must award the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court. The court must consider evidence regarding costs and fees in determining the award.
TEX. R. CIV. P. 91a.7.
By its plain language, Rule 91a.7 mandates an award of attorney's fees to a prevailing party on a Rule 91a motion to dismiss, and the award is not discretionary. See ids="7301269" index="71" url="https://cite.case.law/sw3d/292/660/#p669">id. ; Tex. City Patrol, LLC v. El Dorado Ins. Agency, Inc. , No. 01-15-01096-CV, 2016 WL 3748780, at *5 (Tex. App.-Houston [1st Dist.] July 12, 2016, no pet.) ("Thus, excluding actions by or against a governmental entity or a public official, the rule's language suggests that an award of attorney's fees to the prevailing party on a rule 91a motion to dismiss is mandatory, not discretionary.") (citing Bocquet v. Herring , 972 S.W.2d 19, 20 (Tex. 1998) ("Statutes providing that a party 'may recover,' 'shall be awarded,' and 'is entitled to' attorney's fees are not discretionary.") ); Zheng , 468 S.W.3d at 187.
"Attorney fees awarded under 91a.7 are limited to those associated with challenged cause of action, including fees for preparing or responding to the motion to dismiss." Zheng , 468 S.W.3d at 188 (quoting comment to Rule 91a and stating that party seeking attorney's fees must segregate reasonable and necessary fees incurred to obtain dismissal of challenged claim or demonstrate why segregation is not required); see also CA Partners v. Spears , 274 S.W.3d 51, 81-82 (Tex. App.-Houston [14th Dist.] 2008, pet. denied) (recognizing that, if any attorney's fees relate solely to claims for which fees are unrecoverable, party seeking fees must segregate recoverable from unrecoverable fees, except when discrete legal services relate to both recoverable claims and unrecoverable claims that are so "intertwined" that segregation is not required, and party seeking fees bears burden to show segregation is not required).
While the award of attorney's fees to the prevailing party in a Rule 91a dismissal motion is not discretionary, fixing the amount of "reasonable and necessary" attorney's fees is typically "a matter within the sound discretion of the trial court." Tex. City Patrol , 2016 WL 3748780, at *5 ; see Ragsdale v. Progressive Voters League , 801 S.W.2d 880, 881 (Tex. 1990) (holding that determination of reasonable attorney's fees is matter with sound discretion of trial court); see also Spector Gadon & Rosen, P.C. v. Sw. Sec., Inc. , 372 S.W.3d 244, 251 (Tex. App.-Dallas 2012, no pet.) (holding, in context of Rule 677 permitting award of attorney's fees to garnishee in certain circumstances, that "[t]he fixing of a reasonable attorney's fee is a matter within the sound discretion of the trial court, and its judgment will not be reversed on appeal absent a clear abuse of discretion").
"The court must consider evidence regarding costs and fees in determining the award," and the fees must be "reasonable and necessary." TEX. R. CIV. P. 91a.7; see Bocquet , 972 S.W.2d at 21. When considering the reasonableness of an attorney's fee, the factfinder should consider several factors, including (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for *692 similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. Arthur Andersen & Co. v. Perry Equip. Corp. , 945 S.W.2d 812, 818 (Tex. 1997) ; Glass Cars, Inc. v. Ortiz , No. 05-15-00117-CV, 2016 WL 4368449, at *2-3 (Tex. App.-Dallas Aug. 16, 2016, no pet.) (addressing attorney's fees under Rule 91a ); see also Hays & Martin, L.L.P. v. Ubinas-Brache , 192 S.W.3d 631, 636 (Tex. App.-Dallas 2006, pet. denied) (holding that trial court is required to determine nature and extent of services performed, which is typically expressed by number of hours and hourly rate). The trial court can consider the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties in making its determination regarding the amount of reasonable and necessary attorney's fees. Ubinas-Brache , 192 S.W.3d at 636 ; see Ortiz , 2016 WL 4368449, at *2-3.
B. Analysis
CCEMS presented evidence of its attorney's fees in the form of affidavits and billing records demonstrating the various types of work performed at the firm's hourly rate of $275. The record demonstrates that CCEMS filed numerous pleadings and other documents with the trial court, including its response to the Rule 91a motion, its sur-reply, a motion to vacate the trial court's Rule 91a dismissal, a reply to Dolcefino's response to CCEMS's motion to vacate, its motion for attorney's fees under Rule 91a, its amended motion for attorney's fees, and objections to other documents Dolcefino submitted to the trial court regarding his Rule 91a motion to dismiss. CCEMS's attorneys also attended a hearing on the Rule 91a motion and a deposition on attorney's fees. CCEMS sought a total of $23,897.50 in attorney's fees. It argues that the trial court abused its discretion in awarding it only $850.
However, Dolcefino challenged CCEMS's entitlement to attorney's fees, arguing in the trial court and on appeal that CCEMS's request was "unconscionable," as any fees incurred in the case "stem from [CCEMS's counsel's] original poisoned tree of mistake and misconduct" in suing Dolcefino for CCEMS's counsel's conduct. Dolcefino specifically argued that, because it was counsel's-and not CCEMS's-mistake in wrongly sending un-redacted information to Dolcefino that resulted in all of the litigation at issue, CCEMS's counsel acted unconscionably by billing CCEMS for the resulting legal services. Dolcefino further argued that CCEMS's counsel failed to take reasonable steps to mitigate its misconduct in wrongly mailing the documents to Dolcefino and instead resorted to the "nuclear" option of filing the instant suit. Dolcefino also argued that CCEMS's counsel "never reduced any bills to CCEMS for duplicative and unnecessary work" and that the firm "staffed this matter only with partners, billing at partner rates for work that could/should have been reduced to a lower rate or by attorney's billing at lower rates."
Dolcefino's response identified several entries in CCEMS's attorney's fees evidence reflecting that CCEMS's counsel "included legal work related to [Dolcefino's] motions for summary judgment [and] motion for sanctions in [the] assessment of reasonable attorney's fees that are recoverable"
*693 under Rule 91a, and it identified specific instances of excessive billing. Finally, Dolcefino asserted that CCEMS was not truly a prevailing party under Rule 91a because the trial court vacated its previous order granting Dolcefino's motion to dismiss based on CCEMS's argument that the ruling was untimely, not on the merits of CCEMS's claim. And Dolcefino pointed out that, following the trial court's original order granting Dolcefino's Rule 91a motion to dismiss, the trial court awarded him only $500 as reasonable and necessary attorney's fees for Rule 91a purposes and CCEMS "should be limited to the same amount."
The trial court had discretion to award the amount of attorney's fees it determined were "reasonable and necessary" for CCEMS's defense against Dolcefino's Rule 91a motion to dismiss, based on its consideration of the evidence submitted. See TEX. R. CIV. P. 91a.7; Bocquet , 972 S.W.2d at 21 ; Tex. City Patrol , 2016 WL 3748780, at *5. Although CCEMS presented evidence regarding the time and labor it believed was required to defend against the Rule 91a motion and the amount of work involved to obtain the result of having the trial court vacate its original ruling granting the motion to dismiss, the trial court was still within its discretion to act as a fact-finder in determining the amount of attorney's fees that were reasonable and necessary. See, e.g. , Bocquet , 972 S.W.2d at 21 ; Arthur Andersen & Co. , 945 S.W.2d at 818 ; Ragsdale , 801 S.W.2d at 881 (holding that determination of reasonable attorney's fees is matter with sound discretion of trial court).
The trial court could have properly considered the entire record, including Dolcefino's response arguing that CCEMS's counsel billed work at higher-than-necessary rates or included fees incurred for work not necessary to prevail on the Rule 91a motion, and the relative success of the parties, including the fact that CCEMS initially lost the Rule 91a motion, subsequently prevailed based only on the limited ground that the trial court's ruling on the motion was untimely, and ultimately lost on the merits of its claim on no-evidence summary judgment when Dolcefino opposed its motion to vacate the Rule 91a dismissal in part by moving in the alternative for summary judgment on the same claim. See Ubinas-Brache , 192 S.W.3d at 636 ; Ortiz , 2016 WL 4368449, at *2-3. The trial court could also have considered that the attorney's fees incurred by CCEMS were due, at least in part, to CCEMS's own counsel's mistake in sending the confidential documents to Dolcefino.
Considering the entire record, the evidence CCEMS presented on the reasonableness of its attorney's fees, including the evidence relevant to the Arthur Andersen factors, the common knowledge of the participants as lawyers and judges, and the relative success of the parties on the Rule 91a motion, we cannot say that the trial court abused its discretion in awarding CCEMS $850 in attorney's fees. See Ragsdale , 801 S.W.2d at 881 ; Tex. City Patrol , 2016 WL 3748780, at *5.
We overrule CCEMS's third issue.
Dolcefino's Appeal
Sanctions
In his sole issue on appeal, Dolcefino argues that the trial court erred in overruling his amended motion for sanctions, pursuant to Texas Rule of Civil Procedure 13 and Texas Civil Practice and Remedies Code Chapter 10, and in denying by operation of law the motion for reconsideration of the amended motion for sanctions.
A. Standard of Review
We review a trial court's decision to impose sanctions under an abuse of *694 discretion standard. See WWW.URBAN.INC. v. Drummond , 508 S.W.3d 657, 675 (Tex. App.-Houston [1st Dist.] 2016, no pet.) ; see also Low v. Henry , 221 S.W.3d 609, 614 (Tex. 2007) (holding that we may reverse trial court's ruling only if it acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable). "Our analysis of a motion for sanctions filed under Chapter 10 is the same as our review of a motion filed under Rule 13." Drummond , 508 S.W.3d at 675 (citing Nath v. Tex. Children's Hosp. , 446 S.W.3d 355, 361 (Tex. 2014) ).
"For the purposes of Chapter 10 and Rule 13, courts presume pleadings, motions, and other papers are filed in good faith." Id. (citing Thottumkal v. McDougal , 251 S.W.3d 715, 718 (Tex. App.-Houston [14th Dist.] 2008, pet. denied), and Nath , 446 S.W.3d at 361 ). Dolcefino, as the party moving for sanctions, bears the burden of overcoming this presumption. See Nath , 446 S.W.3d at 361 ; Low , 221 S.W.3d at 614.
A trial court may impose sanctions pursuant to Rule 13 if a pleading is groundless and brought in bad faith or groundless and brought for the purpose of harassment. See TEX. R. CIV. P . 13 ; Drummond , 508 S.W.3d at 676 ; Thielemann v. Kethan , 371 S.W.3d 286, 294 (Tex. App.-Houston [1st Dist.] 2012, pet. denied). A claim is groundless for purposes of Rule 13 if it has "no basis in law or fact" and the claim is "not warranted by good faith argument for the extension, modification, or reversal of existing law." TEX. R. CIV. P. 13. Rule 13 further provides, "No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order." Id.
"To determine if a claim is groundless, the trial court must objectively ask whether the party and counsel made a reasonable inquiry into the legal and factual basis of the claim at the time the document in question was filed." Drummond , 508 S.W.3d at 676 (citing Loeffler v. Lytle Indep. Sch. Dist. , 211 S.W.3d 331, 348 (Tex. App.-San Antonio 2006, pet. denied) ). We determine whether a reasonable inquiry has been made by looking at the facts available to the attorney and the circumstances that existed when the attorney signed and filed the document in question. Id.
In determining whether a party acted in bad faith, we must be mindful that bad faith "is the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes" and does not exist when a party "merely exercises bad judgment or is negligent." Id. (citing Thielemann , 371 S.W.3d at 294 ). "A document is filed for the purpose of harassment if it is filed with the intent to annoy, alarm, and abuse another person." Id. "[T]he trial court must measure the party's conduct and examine the facts available to the party at the time the relevant document was signed." Id. (citing Gomer v. Davis , 419 S.W.3d 470, 478, 480 (Tex. App.-Houston [1st Dist.] 2013, no pet.) ). The trial court must consider the acts or omissions of counsel and not merely the legal merit of a pleading or motion. See ids="7255975" index="112" url="https://cite.case.law/sw3d/419/470/#p478">id.
Chapter 10 provides that the signature of attorneys or parties on a pleading or motion constitutes a certificate by them that, to the best of their knowledge, information, and belief formed after a reasonable inquiry, the instrument is not being presented for an improper purpose, is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law, and there is evidentiary support for each allegation or contention. Id. at 676-77 (citing *695 TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 (West 2017) ). "A court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both." TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(a) (West 2017). The party moving for sanctions under chapter 10 must prove the pleading party's subjective state of mind. See Drummond , 508 S.W.3d at 677.
In deciding whether the denial of sanctions constitutes an abuse of discretion, we examine the entire record, including the findings of fact and conclusions of law, reviewing the conflicting evidence in the light most favorable to the trial court's ruling and drawing all reasonable inferences in favor of the court's judgment. See Lake Travis Indep. Sch. Dist. v. Lovelace , 243 S.W.3d 244, 249-50 (Tex. App.-Austin 2007, no pet.) (citing In re C.Z.B. , 151 S.W.3d 627, 636 (Tex. App.-San Antonio 2004, no pet.) ).
B. Analysis
At the hearing on Dolcefino's request for sanctions, both Dolcefino and CCEMS presented evidence regarding the contentious background between the parties, including the instant lawsuit and other litigation that resulted in the Harris County District Attorney bringing criminal charges against CCEMS. They presented evidence of the pleadings, motions, orders and other aspects of the instant case. Dolcefino provided evidence that, as early as the agreed confidentiality order entered into between the parties after the temporary injunction hearing in May 2015, CCEMS recognized that Dolcefino was not responsible for the mailing of the package and had not contributed in any manner to any harm or threat of harm complained of by CCEMS. He argued that, in continuing its suit, CCEMS demonstrated bad faith. Dolcefino argued, and presented pleadings, other documents, and testimony from his attorney to support his contentions that CCEMS's attorney failed to conduct a reasonable inquiry into the factual and legal basis of CCEMS's claims against Dolcefino, that the case CCEMS pled could not be justified by any reasonable extension of the law, and that CCEMS continued to prosecute its case, seeking a permanent injunction even after the trial court had ruled in favor of Dolcefino on the motion for summary judgment on CCEMS's conversion claims.
Andrew McKinney, attorney for CCEMS, testified that Dolcefino had made numerous document requests pursuant to the Public Information Act for financial information and other documents related to CCEMS's tactical medical team in the course of his investigation. CCEMS's counsel had sent responses and other documents all to the Katy address designated by Dolcefino as his business address, and he had received those documents there. This prior experience in mailing documents to Dolcefino, combined with the contentious relationship between the parties, indicated to McKinney that he could not trust Dolcefino's representations that he had never received the inadvertently mailed, un-redacted documents in question.
McKinney believed that he needed to take legal action to protect CCEMS's interest in the documents, which were of a sensitive nature. He believed that, under the facts of the case at the time he filed the pleadings, the claims for conversion and a permanent injunction were colorable under a good-faith, reasonable extension of the law to deal with the "highly unusual" circumstances. He emphasized that CCEMS's counsel did not file any pleadings in bad faith or with the intent to harass Dolcefino. In fact, he argued that all CCEMS intended to obtain was an *696 injunction prohibiting Dolcefino from opening, copying, or using in any way the un-redacted documents and requiring him to return them to CCEMS immediately or at whatever time in the future they might come into his possession. McKinney cited the pleadings in the case, asserting that aside from the claim for injunctive relief first filed by CCEMS, the rest of CCEMS's pleadings were made in response to pleadings or motions filed by Dolcefino.
The trial court had to consider whether CCEMS or its attorneys violated the requirements for good-faith filings by certifying that, to the best of their knowledge, information, and belief formed after a reasonable inquiry, the pleadings and other filings were not made for an improper purpose, were warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law, and that there was evidentiary support for each allegation or contention. See Drummond , 508 S.W.3d at 676-77 (citing TEX. CIV. PRAC. & REM. CODE ANN . § 10.001 ); see also TEX. CIV. PRAC. & REM. CODE ANN . § 10.004(a) (violations of section 10.001 may result in imposition of sanctions against party, its attorney, or both). In making this determination, the trial court considered the evidence of CCEMS's and its attorneys' subjective states of mind. See Drummond , 508 S.W.3d at 677 (holding that party moving for sanctions under chapter 10 must prove pleading party's subjective state of mind). The trial court also had to presume that the pleadings, motions, and other papers were filed in good faith, and Dolcefino bore the burden of overcoming this presumption. See Nath , 446 S.W.3d at 361 ; Low , 221 S.W.3d at 614 ; Drummond , 508 S.W.3d at 675.
Dolcefino presented evidence that, early in the proceedings, and certainly by the time the parties entered into the agreed confidentiality order in May 2015, attorneys for CCEMS had agreed to findings of fact stating that Dolcefino was not responsible for CCEMS's counsel's mistake in sending the documents that form the basis of this suit. It nevertheless continued to litigate its case and ultimately lost. However, McKinney testified that, at the time he instituted the suit, he was concerned, based on his past experiences with Dolcefino and his knowledge of the sensitivity and importance of the documents that were sent, that Dolcefino was not being honest in stating that he did not have the documents. He believed that an injunction prohibiting Dolcefino from keeping or using the documents would protect his client's interests, and he believed that the conversion claim was justified as a reasonable extension of the current law. Given this contradictory evidence regarding CCEMS's counsel's subjective state of mind at the time it filed the pleadings in question and the arguments and evidence presented by Dolcefino in support of his claim for sanctions, we cannot say that the trial court abused its discretion in determining that Dolcefino was not entitled to sanctions under Chapter 10.
Likewise, the trial court did not abuse its discretion in determining that Dolcefino failed to demonstrate that CCEMS's pleading were groundless and brought in bad faith or for purposes of harassment. See TEX. R. CIV. P . 13 ; Drummond , 508 S.W.3d at 676 ; Thielemann , 371 S.W.3d at 294. McKinney identified a factual basis for his claims when he stated that he knew his office accidentally mailed the documents to Dolcefino at an address where it had sent numerous communications previously. He also identified the contentious nature of the relationship between CCEMS and Dolcefino, which he believed undermined any ability of his *697 client to trust Dolcefino's representations that he had never received the package. He also believed that the claims for conversion and an injunction were supported by law or were warranted by his good faith argument for the extension of existing law. He believed that there had to be some legal mechanism to protect his client from the improper mailing of its confidential documents. Given this evidence, and looking at the facts available to the attorney and the circumstances that existed when he signed and filed the challenged pleadings, the trial court could have determined that CCEMS and its counsel made a reasonable inquiry into the legal and factual basis of the claim at the time the documents in question were filed. See Drummond , 508 S.W.3d at 676.
Considering the entire record, reviewing the conflicting evidence in the light most favorable to the trial court's ruling, and drawing all reasonable inferences in favor of the court's ruling, we cannot say that the trial court abused its discretion in denying Dolcefino's request for sanctions. See Lovelace , 243 S.W.3d at 249-50.
We overrule Dolcefino's issue on appeal.
Conclusion
We affirm the judgment of the trial court.

See Tex. Gov't Code Ann . §§ 552.001 -.353 (West 2015).

This date appears to have been supplied in error by Dolcefino in his request, as his request, which was dated March 30, 2015, predated the information he sought-documentation of expenses incurred "since June 1, 2015."

See Tex. Gov't Code Ann . § 552.301 (West 2012) (permitting responding party to withhold documents while seeking ruling from Attorney General regarding applicability of exemptions, and requiring responding party to notify requestor).

The parties also agreed in the order that "[n]one of the findings of fact in this Order are admissible at any trial on the merits of this matter or binding on the parties in any subsequent proceeding."