

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00004-CV

_____

SCOTT TRUITT, Appellant

V.

JANET HATFIELD, AS AN INDIVIDUAL; JANET HATFIELD, AS TRUSTEE OF
THE TRUST OF DELORIS HATFIELD; AND JANET HATFIELD, AS THE
EXECUTOR OF THE ESTATE OF DELORIS HATFIELD, Appellee

On Appeal from the Probate Court
Denton County, Texas
Trial Court No. PR-2018-01016-01

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

Appellant appeals from the trial court's no-evidence summary judgment on his fraud, breach-of-fiduciary-duty, breach-of-loyalty, and conversion claims against Appellee. Because Appellee's motion was sufficiently specific under the applicable rules; because Appellant did not respond to the summary-judgment motion regarding his fraud, breach-of-fiduciary-duty, and breach-of-loyalty claims; and because the summary-judgment evidence failed to raise more than a scintilla of evidence on each element of his conversion claim, we affirm the trial court's summary judgment.

## I. BACKGROUND[1]

In the 1990s, Deloris Hatfield opened two Computershare accounts under the Uniform Transfers to Minors Act (UTMA) for the benefit of appellant Scott Truitt, her minor grandson, and placed shares of Walmart stock in the accounts.[2] *See* Tex. Prop. Code Ann. § 141.005. Scott's mother Donna Hatfield-Warnock was the custodian of one of the accounts (UTMA 3602); Janet Hatfield, Scott's aunt and

---

[1]The factual allegations in the petition are hard for this court to follow, and Appellant does not include a statement of the underlying facts in his appellate brief. *See* Tex. R. App. P. 38.1(g). The trial court apparently had the same problem when it noted at a hearing, "[I]t's hard for the Court to follow the ball." We have attempted to piece together a timeline based on the entirety of the appellate record, but Appellant's use of imprecise language here and in the trial court made this task difficult.

[2]Because some of the involved parties share the same last name, we will refer to all parties by their first names after initially identifying them by their full names.

Deloris's daughter, was the custodian of the other (UTMA 3629). *See id.* § 141.004. Janet was also designated as the trustee of Deloris's living trust.[3]

At some point in 2005, Deloris allegedly gave Janet her "power of attorney." A total of 75 shares were transferred out of UTMA 3602 on January 25, 2005, apparently emptying the account. On June 14, 2005, 224 shares were transferred out of UTMA 3629; 374 shares were transferred out on March 31, 2008.[4] Scott seems to allege that the shares in UTMA 3602 and 3629 were transferred to an A.G. Edwards account (A.G. Edwards 5094), which "became" A.G. Edwards 8508 in 2005. There is no indication that A.G. Edwards 5094 or 8508 were UTMA accounts. At some point (Scott alleges June 10, 2005) when Scott was 19,[5] A.G. Edwards ostensibly received an authorization letter from Scott, authorizing the transfer of 75 shares from A.G. Edwards 8508 to an A.G. Edwards account owned by Donna. Scott asserts he did not sign the letter, which is undated and does not reflect that it was either sent to or

---

[3]The record contains no evidence of the nature of the trust; however, Janet's counsel asserted at a hearing that it was a living trust, and Scott's counsel did not dispute this characterization. Janet produced the trust documents to Scott during discovery, but it is not part of our record.

[4]On March 4, 2015, UTMA 3629 held no shares after the remaining 1.904 shares were sold on that date.

[5]No evidence shows the date that Scott turned 18 or 21. *See generally* Tex. Prop. Code Ann. § 141.002(11) (defining minor under the UTMA as "an individual who is younger than 21 years of age"). We only have Scott's unsupported petition allegation that he was 19 on April 6, 2005, and his affidavit statement that he was over 18 in November 2020.

3

received by A.G. Edwards. Scott apparently sent another authorization letter, which is again undated with no indication that it was sent or received, authorizing the transfer of the remainder of A.G. Edwards 8508 (374 shares) to a different A.G. Edwards account held by Deloris. Scott alleges that this transferee account was "owned by, and under the control of, Deloris" but that he had not signed the letter.

Deloris died at some point in 2017. In April 2017, Scott alleges that he discovered "the unlawful selling and transfer of the stock" and unsuccessfully attempted to get the shares' proceeds from Janet. In September 2017, Scott filed suit against Janet for fraud, breach of fiduciary duty, breach of loyalty, and conversion, claiming that Janet had transferred and sold Scott's stocks without authorization and had placed the proceeds into Deloris's estate.[6] The breach-of-fiduciary-duty claim was asserted against Janet in her alleged capacities as trustee and executor; the breach-of-loyalty claim was against Janet only as trustee.[7] Scott also raised claims against

---

[6]Scott's suit was consolidated with the probate proceeding regarding Deloris's estate. *See* Tex. Est. Code Ann. §§ 31.002(c), 32.001, 32.006, 34.001. Apparently, Scott and Donna contested Deloris's will in the probate court. Some of the proffered evidence regarding Scott's suit seems to relate to the will contest and not to Scott's claims against Janet.

[7]For purposes of this opinion only, we assume a breach of loyalty is separate from a breach of fiduciary duty. *See generally Ritchie v. Rupe*, 443 S.W.3d 856, 868–69, 887 (Tex. 2014) (discussing corporate officers and directors' duty of loyalty as a fiduciary duty); *Moody v. Nat'l W. Life Ins. Co.*, No. 01-18-01106-CV, 2021 WL 3160375, at *11 (Tex. App.—Houston [1st Dist.] July 27, 2021, no pet.) (op. on reh'g) (same).

4

other involved entities and parties, including Donna, but only the claims against Janet are at issue here.

Janet filed a no-evidence motion for summary judgment on Scott's claims, arguing that he had no more than a scintilla of evidence for most elements.

Scott responded that (1) Janet was impermissibly attempting to "have the Court make an assessment on legal issues and not fact issues" and (2) that his attached summary-judgment evidence established that his signature had been forged and "set forth the facts of an effective conversion and theft of the stocks by moving them from accounts in the name of Scott Truitt to other accounts as yet to be determined." Scott attached his and Donna's affidavits to the response but did not explain how their specific factual averments raised fact issues on any element of his claims. Scott's affidavit generally referred to attached documents regarding A.G. Edwards 8508, UTMA 3602, and UTMA 3629. Scott included a verification in his response; however, he verified that "the attached Interrogatories" were true and correct. Scott did not attach any interrogatories to his response and he did not verify that the factual statements in the response were true and correct. *See generally Am. Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex. 1994) (recognizing summary-judgment response, even if verified, is not a Rule 166a(f) affidavit and does not satisfy nonmovant's burden to raise a fact issue); *City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) ("[P]leadings do not constitute summary judgment proof.").

Although Janet objected to Scott's summary-judgment evidence on several bases, including that portions of the affidavits were conclusory, she withdrew "all objections" at the summary-judgment hearing. The trial court granted Janet's no-evidence motion and ordered that Scott take nothing on his claims.

## II. PROPRIETY OF SUMMARY JUDGMENT

On appeal, Scott argues that the summary judgment was in error because (1) Janet's motion was not sufficiently specific as to which elements of her claims were supported by no evidence and (2) Donna's and Scott's summary-judgment affidavits were more than a scintilla of evidence regarding "the factual scheme utilized by [Janet] to illegally acquire and later conceal the facts surrounding her thief [sic] and conversion of the stocks the subject of the suit." Janet counters that (1) Scott's summary-judgment arguments were insufficiently specific in the trial court and are insufficiently briefed on appeal and (2) Scott failed to proffer more than a scintilla of evidence raising a fact issue on his claims.

### A. FORM OF JANET'S MOTION

We first address Scott's attacks to the specificity (or lack thereof) of Janet's motion. Although Scott did not specially except to the motion, "summary judgments must stand or fall on their own merits, and the non-movant's failure to except or respond cannot supply by default the grounds for summary judgment." *McConnell v. Southside ISD*, 858 S.W.2d 337, 342 & n.5 (Tex. 1993); *see also Clear Creek*, 589 S.W.2d at 678. Even so, Janet was not required to produce evidence to support her no-

evidence motion. *See* Tex. R. Civ. P. 166a(i). Indeed, the mere filing of a proper motion shifts the burden to the nonmovant to come forward with enough evidence to raise a genuine issue of material fact. *See id.*; *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259 (Tex. 2020). But Scott argues that Janet's motion was not proper because it set forth only the general elements of his claims and failed to give notice of which elements were supported by no evidence.

To be proper, a no-evidence motion need not be detailed but it must identify the grounds for the motion and state the elements for which there is no evidence, specifically challenging the evidentiary support for the element. *See* Tex. R. Civ. P. 166a(i) & 1997 cmt.; *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 695–96 (Tex. 2017); Judge David Hittner & Lynne Liberato, *Summary Judgments in Texas: State and Federal Practice*, 60 S. Tex. L. Rev. 1, 15–16 (2019). Even so, the movant need only provide fair notice of the grounds upon which the motion is based such that the nonmovant is provided adequate information to respond and the issues are defined. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009). Although a motion that generally asserts there is no evidence to support a claim would be conclusory, a motion that sets out each challenged element and argues there is no evidence for each would be sufficient in a non-complex case such as this one.[8] *See id.*; *see also Cmty. Health*, 525 S.W.3d at 695–96.

---

[8]At the summary-judgment hearing, the trial judge recognized that the claims were "not that complicated."

Here, Janet specified each challenged element of each claim Scott had raised against her and argued that there was no evidence to support the specified element. For example, regarding Scott's claim for breach of fiduciary duty by Janet as trustee:

> [Janet] moves for entry of a no evidence summary judgment in her favor and against Scott . . . on the entirety of [Scott's] breach of fiduciary duty by trustee claims against her.
>
> . . . There is no evidence that Janet breached any fiduciary duty to [Scott] as the trustee of any trust.
>
> . . . There is no evidence that Janet made any actionable threat against [Scott].
>
> . . . There is no evidence that [Scott] suffered any injury or damage as a result of any claimed breach of fiduciary duty by Janet as the trustee of any trust of which [Scott] is the beneficiary.

The motion gave Scott fair notice of the elements Janet argued were supported by no evidence and defined the issues; thus, it was not impermissibly conclusory. *See, e.g.*, *Timpte Indus.*, 286 S.W.3d at 311; *Bryant v. May*, No. 06-17-00115-CV, 2018 WL 2708531, at *4 (Tex. App.—Texarkana June 6, 2018, no pet.) (mem. op.); *Vodicka v. Lahr*, No. 03-10-00126-CV, 2012 WL 2075713, at *5 (Tex. App.—Austin June 6, 2012, no pet.) (mem. op.); *cf. Cmty. Health*, 525 S.W.3d at 695–96 ("[A] no-evidence motion that lists each element of the plaintiff's claim and then asserts that the plaintiff has no evidence to support 'one or more' or 'any of' those elements is insufficient . . . ."). *See generally First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (setting out elements of breach-of-fiduciary-duty claim).

## B. Sufficiency of Scott's Summary-Judgment Arguments

Janet contends that Scott's summary-judgment response did not "brief or point out his alleged evidence that purportedly raises a fact issue." The procedural rules authorized Janet, without presenting evidence, to move for summary judgment on the ground that no evidence supported essential elements of Scott's claims. Tex. R. Civ. P. 166a(i). The trial court was required to grant the motion unless Scott then produced summary-judgment evidence that raised a genuine, material fact issue. *See* Tex. R. Civ. P. 166a(i) & 1997 cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

In his summary-judgment response, Scott globally argued that his and Donna's affidavits raised a fact issue regarding "conversion and theft":

> [T]he affidavits of [Donna and Scott] set forth the facts of an effective conversion and theft of the stocks by moving them from accounts in the name of Scott . . . to other accounts as yet to be determined. When inquiry was made [Janet] said that she would have to talk with her attorney and never provided any additional information regarding the location or cashing of the stocks. More importantly, as shown in the affidavit . . . of Scott . . ., his signature was forged on the transfer of the stock certificates including using an[] out of date identification which should have been rejected, but was not in buy [sic] the stock companies. This is by far more than a scintilla of evidence which should result in the denial of the motion of [Janet].

Although Scott was not required to marshal his proof, he was required to point out evidence that raised a fact issue on the elements Janet challenged in her motion. *See* Tex. R. Civ. P. 166a(i) & 1997 cmt. In other words, Scott must have, "at the very minimum, provide[d] some form of discussion that raise[d] issues of material fact on

9

the challenged elements." *Holloway v. Tex. Elec. Util. Constr., Ltd.*, 282 S.W.3d 207, 212 (Tex. App.—Tyler 2009, no pet.). Contrary to Scott's counsel's assertion to the trial court, he did have to attempt to "connect all the dots."

Scott solely argued that he had raised fact issues on his conversion claim and did not address or even mention his claims for fraud, breach of fiduciary duty, or breach of loyalty. Because he did not specifically respond to these claims or their elements, the trial court was required to grant summary judgment on the unaddressed claims based on Janet's motion. *See KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015); *Holloway*, 282 S.W.3d at 212–13.

And his response regarding his conversion claim was also insufficient. He generally states that Donna's affidavit "set[s] forth the facts of an effective conversion," but points to no specific portion that addresses any element of conversion. Similarly, Scott's references to statements in his own affidavit are untethered to a specific conversion element. The trial court was not required to sift through Scott's summary-judgment proof to determine if Scott had raised a fact issue on each element of conversion. *See, e.g.*, *Morgan v. Amarillo Nat'l Bank*, 699 S.W.2d 930, 938 (Tex. App.—Amarillo 1985, writ ref'd n.r.e.); *I.P. Farms v. Exxon Pipeline Co.*, 646 S.W.2d 544, 545 (Tex. App.—Houston [1st Dist.] 1982, no writ); Hittner & Liberato, *supra* at 113; *cf. Blake v. Intco Invs. of Tex., Inc.*, 123 S.W.3d 521, 525 (Tex. App.—San Antonio 2003, no pet.) ("As an appellate court, we are not required to

10

search the record for a scintilla of evidence raising a material fact issue without more specific guidance.").

Not only was Scott's summary-judgment response insufficient but his appellate briefing is also lacking. Scott includes no statement of the facts pertinent to his attack on the merits of the summary judgment. *See* Tex. R. App. P. 38.1(g). And he points to no specific summary-judgment evidence that would bar summary judgment other than his generalized argument that his and Donna's affidavits set forth a "factual scheme . . . surrounding her thief [sic] and conversion of the stocks" and his reference to Donna's affidavit statement that Janet falsely represented "that nothing could be done about the forgery." Again, Scott does not attempt to argue the impropriety of the summary judgment on his fraud, breach-of-fiduciary-duty, and breach-of-loyalty claims (other than his unsuccessful attack on the sufficiency of Janet's summary-judgment motion and his ad hominem attacks on the trial court's failure to "understand and apply the summary judgement evidenced [sic] proffered"). His brief is nothing more than generalized statements railing against the judgment in toto. This is insufficient to provide a basis upon which to reverse the trial court's summary judgment. *See, e.g.*, *Lowry v. Tarbox*, 537 S.W.3d 599, 620 (Tex. App.—San Antonio 2017, pet. denied); *Blake*, 123 S.W.3d at 525.

We conclude that in response to Janet's no-evidence motion, Scott wholly failed to respond and raise a genuine issue of material fact on his fraud, breach-of-fiduciary-duty, and breach-of-loyalty claims. Thus, the no-evidence summary

11

judgment was not in error on these claims.[9] *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 624, 626 (Tex. 1996); *cf. Li v. Pemberton Park Cmty. Ass'n*, 631 S.W.3d 701, 704–05 (Tex. 2021) (directing appellate courts to liberally construe the procedural rules to reach the merits of summary-judgment grounds that were substantively argued in the trial court). But because it could be seen as a "close question" whether Scott's trial and appellate arguments directed to his conversion claim met the minimum requirements of Rule 166a(i) or the rules of appellate procedure, we will address that claim in an abundance of caution. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207–08 (Tex. 2002); *see Li*, 631 S.W.3d at 704. *See generally Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) ("Simply stated, appellate courts should reach the merits of an appeal whenever reasonably possible.").

## C. CONVERSION: GENUINE ISSUE OF MATERIAL FACT?

### 1. Review Standards

We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426. We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*, 286 S.W.3d at 310. If the nonmovant brings forward more than a

---

[9]Even so, Scott's breach-of-fiduciary-duty claim against Janet as the executor of Deloris's estate was not in error because Scott admitted in his summary-judgment affidavit that Janet was not the executor.

12

scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

Because only Scott's conversion claim is at issue, we confine our analysis to the evidence relevant to the elements of that claim. Conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). To avoid summary judgment on his conversion claim, Scott must have produced more than a scintilla of evidence that (1) he owned, possessed, or had the right to immediate possession of personal property; (2) Janet unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, Scott's rights; and (3) Scott suffered injury. *See United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147–48 (Tex. 1997); *Lopez v. Lopez*, 271 S.W.3d 780, 784 (Tex. App.—Waco 2008, no pet.).

## 2. Review Scope

Scott argues that Scott's and Donna's affidavits raised genuine issues of material fact on each element of his conversion claim. Janet counters that most of Scott's and Donna's affidavits were conclusory because the challenged statements were no more than *ipse dixit* unsupported by any underlying facts. Janet recognizes that she withdrew her objections to Scott's evidence in the trial court, but she asserts

13

that she may raise her substantive objection for the first time on appeal.[10] Janet is correct that a conclusory affidavit is substantively defective and that the issue may be raised for the first time on appeal. *See Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018); *Albright v. Good Samaritan Soc'y–Denton Vill.*, No. 02-16-00090-CV, 2017 WL 1428724, at *2 (Tex. App.—Fort Worth Apr. 20, 2017, no pet.) (mem. op.); *cf.* Tex. R. Civ. P. 166a(f) (providing if form defects in affidavits are not raised in the trial court, defect may not be used to support reversal on appeal).

A conclusory statement is one that does not provide the underlying facts to support the conclusion and is not readily controvertible. *See Rockwall Commons Assocs., Ltd. v. MRC Mortg. Grantor Tr. I*, 331 S.W.3d 500, 512 (Tex. App.—El Paso 2010, no pet.); *Cooper v. Circle Ten Council Boy Scouts of Am.*, 254 S.W.3d 689, 698 (Tex. App.—Dallas 2008, no pet.). Although we examine the entire record in the light most favorable to the nonmovant, *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006), we will not consider substantively defective evidence because such evidence is incompetent to raise a fact issue. *See Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) ("Conclusory affidavits are not enough to raise fact issues."); *Mathis v. Bocell*, 982 S.W.2d 52, 60 (Tex. App.—Houston [1st Dist.] 1998, no pet.) ("Substantive defects are never waived because the evidence is incompetent and cannot be considered under any circumstances."). Therefore, as we consider the summary-

---

[10]Scott did not file a reply in support of his appellate arguments; therefore, he has not responded to Janet's evidentiary arguments.

judgment evidence and whether it constituted more than a scintilla raising a fact issue, we necessarily will also consider whether that evidence is substantively defective.

### 3. The Pleadings and Summary-Judgment Evidence

Although pleadings are not summary-judgment evidence, *see Hidalgo v. Sur. Sav. & Loan Ass'n*, 462 S.W.2d 540, 545 (Tex. 1971), Scott was required to give fair notice of the nature of his claim and the relief sought, *see* Tex. R. Civ. P. 45(b), 47(a). Therefore, Scott's pleading of his claim provides part of the framework for our review. *See* Tex. R. Civ. P. 166a(c) (providing trial court's summary judgment must be based in part on the pleadings on file at the time of the hearing); *see also Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) ("Defendants are not required to guess what unpleaded claims might apply and negate them."); *Cook v. Brundidge, Fountain, Elliott & Churchill*, 533 S.W.2d 751, 759 (Tex. 1976) (holding defendant only "required to meet the plaintiff's case as pleaded" when moving for summary judgment).

In pleading his claim, Scott alleged that he legally possessed the Walmart stock through his UTMA and A.G. Edwards "account"; that Janet, through Deloris's power of attorney, wrongfully exercised control by transferring "assets" out of Scott's "account" without his knowledge or consent; and that the stocks cannot be returned because they were transferred and sold without his authorization. Scott also alleged that he demanded the return of the stock and that Janet refused. But because Scott claims that Janet wrongfully exercised control over the stock without his consent, a

15

demand for the return of the property and a refusal are not elements of his claim. *See*

*Guillory v. Dietrich*, 598 S.W.3d 284, 292 (Tex. App.—Dallas 2020, pet. denied).

Donna generally stated in her affidavit that Janet had transferred "funds and stocks" into "the Estate accounts instead of forwarding the funds to [Scott]." Donna's affidavit had no attachments.

In his summary-judgment affidavit, Scott averred that Janet "cashed the stock intended for [Scott] and moved them" into Deloris's estate and into the trust.[11] Scott attached to his affidavit (1) the undated letter of authorization from "Scott A. Truitt," allowing a transfer of 75 shares of Walmart stock from A.G. Edwards 8508 to Donna's A.G. Edwards account; (2) the undated letter of authorization from "Scott A. Truitt," allowing the transfer of 374 shares from A.G. Edwards 8508 to Deloris's A.G. Edwards account;[12] (3) a May 2017 "Certificate Transcript" for UTMA 3602, which was addressed to Donna as Scott's custodian and reflects three 2005 transfers of a total of 75 shares; (4) a May 2017 "Certificate Transcript" for UTMA 3629, which was addressed to Janet as Scott's custodian and shows two prior transfers of a total of 598 shares; (5) a taxation statement of holdings for UTMA 3629 that was addressed to

---

[11]Scott avers that Janet transferred or "moved" the stocks into both Deloris's estate and the trust. It appears that Scott uses trust and estate interchangeably; however, we will refer to them separately.

[12]Scott identified the letters of authorization as evidence that Janet "misrepresented herself by using an expired identification." Nothing in the undated letters shows that an expired (or any) identification was used.

16

Janet as Scott's custodian and shows five "Dividend Reinvestment[s]" for tax year 2007; and (6) a May 2017 "Summary of Account Holdings and Transaction Form" for UTMA 3629 that was addressed to Janet as Scott's custodian and shows the shares' activity between July 1998 and March 2015.[13]

None of Scott's summary-judgment evidence raises a fact issue that Janet unlawfully and without authorization transferred stocks from A.G. Edwards 8508 (or its predecessor A.G. Edwards 5094), UTMA 3602, or UTMA 3629 and put the proceeds into Deloris's estate or trust. The two undated authorization letters showed attempted transfers from A.G. Edwards 8508 to Donna's account and to Deloris's account; but there is no evidence that Janet was involved. Scott admitted in his petition that Deloris owned and controlled her transferee account. *See* Hittner & Liberato, *supra* at 65 (stating pleadings are not summary-judgment evidence but recognizing that "an opponent's pleadings may constitute summary judgment proof if they contain judicial admissions"). The undated authorization letters are signed by "Scott A. Truitt." Even though Scott states in his affidavit that Janet forged his signatures because "she was the only person who could have done so," this is a conclusory statement and is no proof that Janet did, especially when the transfers out of A.G. Edwards 8508 were not to Janet but were to Donna and to Deloris. *See*

---

[13]Scott identified the account information about UTMA 3602 and 3629 as proof that Janet was Scott's "fiduciary representative . . . on the stocks as custodian of the stocks." Donna was the custodian of UTMA 3602.

*Ryland Grp.*, 924 S.W.2d at 122. The certificate transcripts, the statement of holdings, and the summary of account holdings show nothing more than the fact that transfers from the UTMA accounts occurred and that Donna and Janet had been the accounts' custodians. There is no evidence that the shares in the UTMA accounts were transferred to A.G. Edwards 5092 or 8508, that the shares were ever transferred into Deloris's estate or trust, or that Janet transferred the shares from A.G. Edwards 8508 to Deloris's estate or trust. Scott's bare assertion, unsupported by any facts that trace the funds from UTMA 3602 and 3629 into A.G. Edwards 5092 and 8508 and then to Deloris's estate or trust, is incompetent to supply this essential link in the evidentiary chain.

We possibly could presume this link by independently comparing the account evidence regarding UTMA 3602, UTMA 3629, and A.G. Edwards 8508 and attempting to pair a transfer from a UTMA account with a similar transfer into A.G. Edwards 8508. But that is not our task—the burden was on Scott to provide the necessary facts and specifically tie those facts to specific elements of his conversion claim. *See Blake*, 123 S.W.3d at 525. In essence, Scott and Donna merely averred in their affidavits that there were accounts that Scott was the beneficiary of, that Janet forged his name on transfer authorizations from the accounts, and that Janet put the funds from the stocks into Deloris's estate and trust. These conclusory, unsupported statements do not raise a genuine issue of material fact on the second element of his conversion claim—Janet unlawfully and without authorization assumed and exercised

18

control over the property to the exclusion of, or inconsistent with, Scott's rights. *See, e.g., Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 685–87 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *Fabian v. Cantwell*, No. 03-16-00712-CV, 2017 WL 1833496, at *2 (Tex. App.—Austin May 3, 2017, no pet.) (mem. op.).

Further, and as Janet argued in her no-evidence motion, Scott raised only a scintilla of evidence of his damages attributable to the alleged conversion. The measure of conversion damages is the fair market value of the property at the time and place of the conversion. *See United Mobile*, 939 S.W.2d at 147–48. In his affidavit, Scott asserted that Janet's "removing [the stocks] to the estate" resulted in an $80,000 "loss."[14] There is no summary-judgment evidence of the date of the conversion or the value of the stocks on those dates. The statement of holdings and the summary of account holdings regarding UTMA 3629 reflect the prices per share on certain dates, but Scott does not refer to these numbers or dates and he does not tie any of the prices to his stated damages amount or even assert that he is seeking the fair market value of the stocks based on the prices per share noted on the UTMA 3629 documents. In short, Scott's damages assertion in his affidavit is unsupported by and untethered to facts, rendering it conclusory and no evidence to defeat Janet's summary-judgment motion. *See Ryland Grp.*, 924 S.W.2d at 122; *Apollo Expl., LLC v. Apache Corp.*, 631 S.W.3d 502, 544–45 (Tex. App.—Eastland 2021, pet. pending);

---

[14]Scott pleaded for the return of "674.904 shares" of stock and "monetary relief between $100,000 and $200,000."

*Chapa v. Stonehaven Dev. Inc.*, No. 13-13-00030-CV, 2013 WL 4426383, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 15, 2013, no pet.) (mem. op.).

### III. CONCLUSION

Janet's no-evidence motion for summary judgment was compliant with the rules and gave fair notice of the elements she challenged; thus, the burden shifted to Scott to respond and raise a genuine issue of material fact on each claim. Scott's response addressed only his conversion claim. Because he ignored the challenged elements of his fraud, breach-of-fiduciary-duty, and breach-of-loyalty claims, the trial court was required to grant the no-evidence motion on those claims. And although Scott's trial and appellate briefing was insufficient on his conversion claim, his summary-judgment evidence (most of which was conclusory) was no more than a scintilla of evidence that failed to raise a genuine issue of material fact on at least two of that claim's elements. Thus, we overrule Scott's appellate point and affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

We note that Janet argued in the trial court and now on appeal that limitations barred Scott's claims, which she asserted Scott judicially admitted in his petition. But limitations was Janet's affirmative defense on which she carried the burdens of pleading and proof; thus, Janet could not properly move for a no-evidence summary judgment on that basis. *See* Tex. R. Civ. P. 94, 166a(i) & 1997 cmt.; *Zamora v. Tarrant Cnty. Hosp. Dist.*, 510 S.W.3d 584, 589 (Tex. App.—El Paso 2016, pet. denied). In any

event, limitations was not a proper part of the trial court's no-evidence determination and is not properly before us in this appeal.

/s/ Brian Walker

Brian Walker
Justice

Delivered:  December 2, 2021

21