**Opinion issued February 10, 2026**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00595-CV

_____

**ROSHARANA VELANI AND ROZMIN VELANI, INDIVIDUALLY, AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF NAUSHAD VELANI, DECEASED, Appellants**

**V.**

**MOIZ ASHRAF DHANJI, Appellee**

---

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-29885**

---

## MEMORANDUM OPINION

This case arises from a business transaction between Moiz Ashraf Dhanji and Naushad Velani. Naushad operated a used-car business, and Dhanji contracted with him to purchase the business's assets. After a dispute arose, Dhanji sued Naushad

for breach of contract and fraud. He alleged that Naushad failed to transfer the contracted-for assets to him and that Naushad fraudulently induced him to sign the contract by misrepresenting the assets. Dhanji later added Naushad's mother, Rosharana Velani, and his sister, Rozmin Velani, as defendants and sued them and Naushad for conspiracy.

The Velanis answered the suit and filed counterclaims for breach of contract and conversion. Naushad died before trial, and Rozmin notified the trial court that she was acting on behalf of Naushad's Estate as its personal representative.

A jury found for Dhanji on his claims and against the Velanis on their counterclaims. The trial court rendered judgment in Dhanji's favor. Based "on the claim that defendants [Naushad, Rosharana, and Rozmin] were part of a conspiracy that damaged [Dhanji]," the judgment awarded Dhanji fraud damages, contractual damages, and trial-level attorney's fees against (1) Naushad's Estate,[1]

---

[1] We recognize that an estate "is not a legal entity and may not properly sue or be sued as such." *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 786 (Tex. 2006). "A suit seeking to establish the liability of an estate, and subject its property to a judgment, should ordinarily be filed against the personal representative, or in certain circumstances the heirs or beneficiaries." *Estate of C.M. v. S.G.*, 937 S.W.2d 8, 10 (Tex. App.—Houston [14th Dist.] 1996, no writ); *see Dueitt v. Dueitt*, 802 S.W.2d 859, 861 (Tex. App.—Houston [1st Dist.] 1991, no writ) ("[A] suit on behalf of a decedent's estate is a nullity, unless the estate's personal representative appears in or participates in the suit."). A judgment against an estate may be valid if the personal representative of the estate appears and participates in the case. *Embrey v. Royal Ins. Co. of Am.*, 22 S.W.3d 414, 415 n.2 (Tex. 2000); *see Estate of C.M.*, 937 S.W.2d at 10 ("A judgment against an estate individually is not necessarily void . . . if the personal representative of the estate appears in or participates in the lawsuit.").

(2) Rosharana, and (3) Rozmin, jointly and severally.  The judgment also awarded

Dhanji conditional appellate-level attorney's fees.

Roshanara and Rozmin, individually and as the representative of Naushad's

Estate, appealed the trial court's judgment.[2]  They raise fifteen issues on appeal.  In

thirteen issues, the Velanis challenge the trial court's award of damages and

attorney's fees to Dhanji.  In two issues, they complain that they were entitled to

damages and attorney's fees.

After considering the parties' arguments and the record, we conclude that the

trial court erred in awarding contractual damages and trial-level attorney's fees to

---

Here, the record shows that Rozmin appeared and participated in the case individually and as the personal representative of Naushad's Estate.  In the Velanis' second amended answer and counterclaim, Rozmin appeared "for herself and on behalf of the Estate of Naushad Velani."  Rozmin also participated at trial, informing the trial court on the record that she was the representative of Naushad's estate.  The trial court's judgment states that "Naushad Velani, deceased, appeared through the designated representative of his estate, Rozmin Velani."  Given the record, the judgment against Naushad's Estate, through its personal representative Rozmin Velani, is not invalid even though it was rendered against the estate.  *See Garcia v. Guerrero*, No. 04-09-00002-CV, 2010 WL 183480, at *2 (Tex. App.—San Antonio Jan. 20, 2010, no pet.) (mem. op.) (holding judgment awarded estate was not void because judgment identified estate's personal representatives, who participated at trial); *Bernstein v. Portland Sav. & Loan Ass'n*, 850 S.W.2d 694, 700 (Tex. App.—Corpus Christi 1993, writ denied) (holding representative participated in case because (1) he was served and (2) filed a motion and amended answers both individually and as estate's personal representative).

[2]  To reflect that Rozmin Velani appears on appeal individually and as the personal representative of Naushad's Estate, we reform the appellate style from *Naushad Velani, Rosharana Velani, and Rozmin Velani v. Moiz Ashraf Dhanji* to *Rosharana Velani and Rozmin Velani, Individually, and as Personal Representative of the Estate of Naushad Velani, Deceased v. Moiz Ashraf Dhanji.*

3

Dhanji based on his conspiracy claim because a defendant cannot be held liable for conspiring to breach a contract. However, Dhanji is entitled to the contractual damages and attorney's fees found by the jury based on his breach-of-contract claim against Naushad. The jury found that Naushad failed to comply with the contract and that the non-compliance damaged Dhanji.

We also conclude that the trial court erred in awarding Dhanji both fraud and breach-of-contract damages for a single injury. Dhanji was entitled only to the greater award of contractual damages and was not entitled to the fraud damages.

Accordingly, we modify the judgment to (1) omit the award of contractual damages and trial-level attorney's fees based on conspiracy, (2) award the contractual damages and trial-level attorney's fees to Dhanji against only Rozmin, as the personal representative of Naushad's Estate, based on the jury's breach-of-contract findings, and (3) omit the award of fraud damages. We affirm the judgment as modified.

## Background

In July 2015, Dhanji was interested in buying a business. He saw an online ad listing a Houston used-car business for sale for $200,000. The ad stated that the business had generated $1.2 million in sales with a net profit of $350,000 in 2014.

4

Dhanji went to the business's location on Bissonnet Street where he met Naushad, who operated the business. Naushad operated under several assumed business names, including Houston Motor Cars and Texas Motor Cars.

Dhanji decided to buy the business. He wrote a check for $25,000 to Naushad as a deposit. Over the next couple of weeks, Dhanji and Naushad negotiated the terms of a contract covering the sale of the business's assets. Naushad's sister, Rozmin, worked at the business and answered Dhanji's questions during the negotiations.

At Naushad's request, Dhanji gave Naushad two more checks—one for $47,000 and another for $103,000—before the contract was signed. Naushad's mother, Rosharana, endorsed the checks, and the checks were deposited into a bank account she shared with Naushad.

On July 28, 2015, Naushad and Dhanji signed the agreement to purchase the business assets (the Contract). The Contract provided that Naushad would "sell the Assets [of the business] to [Dhanji] and [Dhanji] agree[d] to purchase the Assets from [Naushad]." It stated that "the Assets" consisted of "[a]ll equipment used in carrying on the Business" and "[a]ll inventory and packaging" but "[did] not include any Excluded Assets." The Contract defined "Excluded Assets" as "computers, table in 3rd office, refrigerator, cold water dispenser, all signage, all paperwork,

5

phone numbers & all personal property[,] . . . [a]ny and all DBAs, [a]ll Licenses, [and] Permits under current business owner's name."

The total purchase price of the Assets was $200,000—$150,000 for "Business Equipment" and $50,000 for "Inventory and packaging." About 40 vehicles were on the lot when the parties signed the Contract. Dhanji testified that Naushad told him that all the vehicles on the lot were included in the asset sale, but he never received an inventory listing the vehicles before signing the contract. Some of the vehicles on the lot were operable, but others were not.

The contract required Dhanji to pay a $25,000 deposit, which he had already paid. The $175,000 balance was due by the "Closing Date." Although it did not define "Closing Date," the contract defined "closing" to mean "the purchase and sale of the Assets as described in this Agreement by the payment of agreed consideration, and the transfer of title to the Assets." When the parties signed the Contract on July 28, Dhanji had already paid Naushad $175,000 of the $200,000 contract price. A provision in the Contract permitted Dhanji to pay the remaining $25,000 out of the proceeds of car sales made in August 2015. And, if a balance remained at the end of August, Dhanji had until October 31, 2015, to pay the remainder.

The parties also agreed that, for 30 days after the Contract's signing, Naushad would train Dhanji how to operate the business. The training ended on August 29.

By that date, Naushad had received proceeds from the business's August sales, leaving a remaining balance on the Contract of between $16,000 and $16,500.[3]

Dhanji testified that, on August 29, Naushad provided him with an inventory listing the vehicles that he would receive. It did not include all the vehicles on the lot. Dhanji inspected the cars listed on the inventory and found that they were "very old," leaking oil, and in need of repair.

Naushad asked Dhanji to meet him on August 30. At the meeting, Naushad asked Dhanji to pay him the remaining balance on the Contract. Dhanji told him that he would pay the balance after they discussed the inventory list. They could not reach an agreement, and Naushad "stormed away." Dhanji told Naushad that he would sue him.

The next day, August 31, Dhanji arrived at the business to find the lock on the office door broken. The office furniture and equipment along with the keys to the vehicles were gone. Vehicles had also been taken from the lot. All the operable vehicles were gone. The only cars remaining were thirteen inoperable vehicles. Some of them had missing engines, and others were leaking oil. Dhanji testified that they were not safe to sell and had no value.

---

[3] At trial, the Velanis offered Naushad's affidavit in which he stated that a balance of $16,500 remained. During trial, Dhanji testified that the remaining balance was $16,000 and later that it was "16,000 plus," but he did not remember the exact amount.

Dhanji called the police and reported that the business had been burglarized. He suspected that Naushad had taken the operable cars and the other missing items. Dhanji knew that Naushad had opened another used-car business, and he later learned that Naushad had taken the operable cars there.

Dhanji testified that Naushad never gave him the titles or keys to the inoperable cars. In January 2016, Dhanji had the inoperable cars towed to storage.

In May 2016, Dhanji sued Naushad. His claims included breach of contract and fraud. Dhanji amended his petition several times, adding Rosharana and Rozmin as defendants and a conspiracy claim. He also added a claim entitled "theft by trick." Dhanji sought actual and exemplary damages and attorney's fees.

The Velanis answered the suit, generally denying Dhanji's claims and asserting affirmative defenses. They also asserted counterclaims for breach of contract and conversion. They alleged that Dhanji had breached the Contract by refusing to pay the full contract price and had converted a 1996 Honda motorcycle belonging to Naushad left at the business. The Velanis sought actual damages for both claims and attorney's fees based on their breach-of-contract claim.

Naushad died before trial. Rozmin informed the trial court that she would appear individually and on behalf of Naushad's Estate as its personal representative.[4]

---

[4] Hereafter, when we refer to "the Velanis," we are referring to Roshanara and to Rozmin, individually, and as the personal representative of Naushad's Estate.

In February 2023, the case was tried to a jury. Dhanji offered evidence showing that, when he signed the Contract, he believed that all the vehicles on the lot, including the operable ones, were part of the business's inventory that he was buying. He testified that he formed that belief based on Naushad's representations.

Dhanji testified that he never received the titles or the keys to the vehicles left on the lot. He pointed out that, under the terms of the Contract, Naushad was obligated to transfer the titles of the vehicles to him. Dhanji testified that the thirteen inoperable cars left on the lot were of no value. And, without title, he could not sell them. He confirmed that, by the end of August 2015, he had paid all but about $16,000 of the Contract's $200,000 purchase price.

Dhanji presented evidence showing that some of the vehicles on the lot had not been owned by Naushad and were being sold on consignment. The business's landlord, Said Pajooh, leased the car lot first to Naushad and then to Dhanji. He testified that Naushad told him in July 2015 that certain vehicles on the lot were being sold on consignment, but then in August 2015, Naushad told Pajooh that he owned the vehicles.

Another witness, Qasin Alhasan, testified that, in August 2015, Naushad was selling some of the cars on the lot for him on consignment. Alhasan testified that, at the end of August, his cars were moved to Naushad's other used-car business.

9

During their case in chief, the Velanis offered into evidence a list of twenty cars that they claimed comprised the inventory purchased by Dhanji. They asserted that the list was attached to the Contract when the parties signed it and proffered a copy of the Contract with the list attached. The Velanis claimed that Dhanji knew that he would not receive all the cars on the lot but would receive the twenty vehicles on the inventory list. They claimed that Dhanji knew that some of the vehicles on the list needed repair and that Dhanji received the vehicles on the list. Dhanji denied that the inventory list was attached to the Contract when he signed it or that he knew that he would not receive all the vehicles on the lot.

To support their conversion counterclaim, the Velanis offered a certificate of title for the 1996 Honda motorcycle. It showed that Naushad acquired the motorcycle on July 7, 2015, and titled it under one of his assumed business names—Texas Motor Cars. They also proffered a letter, dated March 16, 2016, from Naushad to Dhanji. The letter stated that the motorcycle "belong[ed] to Naushad Velani owner of Texas Motor Cars." The letter demanded that Dhanji either return the motorcycle or pay Naushad $10,000. Dhanji denied that he received the letter.

In addition, the Velanis offered Dhanji's discovery responses, which they argued showed that Dhanji took possession of the motorcycle and assumed ownership of it without Naushad's consent. They pointed to responses from 2017 in which Dhanji admitted that he took possession of the motorcycle because it was

10

"left [on] our lot for a long time." The responses showed that, like the other vehicles left on the lot, the motorcycle was inoperable. They also stated that Dhanji would return the motorcycle to Naushad if he paid Dhanji "[the] storage fees, towing charges and the money [he] spent on fixing the motorcycle."

At trial, Dhanji acknowledged that Naushad left the motorcycle on the lot. Dhanji testified that, when it was left, the motorcycle was inoperable and valued it at between $100 to $200. He also acknowledged that he had obtained a bonded title for the motorcycle in his name. When asked why he obtained title, Dhanji testified, "According to our conversation and all the agreements, we were told that the entire lot, everything that is parked in my lot is mine and that includes [the] bike because he left it on August 29th."

At the charge conference, the Velanis objected to the trial court's jury charge and orally dictated into the record their requested questions and instructions. The trial court overruled their objections and refused their requested questions and instructions. Dhanji stated that he had no objections to the court's charge.

The theories of liability submitted to the jury were Dhanji's breach-of-contract, fraud, and conspiracy claims and the Velanis' breach-of-contract and conversion counterclaims. The jury found that Naushad failed to comply with the Contract and awarded Dhanji (1) $150,000 in contractual damages, (2) $50,683 for trial-level attorney's fees, and (3) a total of $30,000 for appellate-level attorney's

11

fees. The jury also found that Naushad committed fraud against Dhanji and awarded $67,500 in fraud damages but declined to award exemplary damages. The jury determined that Naushad, Rosharana, and Rozmin were each part of a conspiracy that damaged Dhanji. The jury found against the Velanis on their breach-of-contract and conversion counterclaims.

In its judgment, the trial court awarded Dhanji (1) $150,000 in contractual damages, (2) $50,683.75 for trial-level attorney's fees, and (3) $67,500 in fraud damages against Naushad's Estate,[5] Rosharana, and Rozmin, jointly and severally. The judgment stated that the award of the damages and trial-level attorney's fees were "based on the claim" that Naushad, Rosharana, and Rozmin were "part of a conspiracy that damaged [Dhanji]." In a separate part of the judgment, Dhanji was awarded conditional appellate-level attorney's fees. The judgment awarded the Velanis nothing on their breach-of-contract and conversion counterclaims.

On appeal, the Velanis raise fifteen issues. We re-order the issues for organizational clarity. We first address the Velanis' issues challenging the trial court's award of damages and attorney's fees to Dhanji and then address their remaining two issues complaining that the trial court should have awarded them

---

[5]     As discussed in footnote 1, although an estate is not an entity that can be sued, Rozmin has appeared as the personal representative of Naushad's Estate. Going forward, when we refer to Naushad's Estate, we are referring to the estate's personal representative, Rozmin. When we refer to Rozmin, we are referring to her in her individual capacity.

damages on their conversion counterclaim and attorney's fees on what they contend was a nonsuited claim by Dhanji under the Texas Theft Liability Act.

## Measure of Damages Instruction

In their ninth issue, the Velanis contend that the trial court erred because it did not instruct the jury regarding the proper measure of damages for Dhanji's breach-of-contract claim. Our review of the record shows that the Velanis did not preserve error for this issue.

Although an objection is sufficient to preserve some charge errors, an appellant must do more than object to preserve a complaint that the trial court improperly omitted an instruction in the charge. *Patriot Contracting, LLC v. Shelter Prods., Inc.*, 650 S.W.3d 627, 651 (Tex. App.—Houston [1st Dist.] 2021, pet. denied). For that complaint, an appellant—as the party complaining of the trial court's judgment—must request and tender a substantially correct instruction in writing. TEX. R. CIV. P. 278 ("Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment."); *see Patriot Contracting*, 650 S.W.3d at 651; *Elliott v. Whitten*, No. 01-02-00065-CV, 2004 WL 2115420, at *11 (Tex. App.—Houston [1st Dist.] Sept. 23, 2004, pet. denied) (mem. op.).

Several days before the charge conference, the Velanis filed a proposed jury charge. In it, they tendered a damages question and a measure-of-damages instruction for *their* breach-of-contract counterclaim, but they did not tender a damages question and measure-of-damages instruction for Dhanji's breach-of-contract claim.

At the charge conference, the Velanis objected to the trial court's charge and dictated proposed jury questions and instructions into the record. They asked the trial court to include a measure-of-damages instruction for Dhanji's breach-of-contract claim. The Velanis' counsel stated, "I propose an explanation, the measure of damages just state—consider the full elements of damages, if any, on paid contract sum less cost of completion or remedy any defects, if any." The trial court denied the Velanis' objections and refused their proposed questions and instructions.

Although the Velanis orally addressed the issue, they never tendered a written measure-of-damages instruction for Dhanji's breach-of-contract claim. Without a written instruction, the Velanis failed to preserve their complaint about the omitted instruction.[6] *See* TEX. R. CIV. P. 278; *TeleResource Corp. v. Accor N. Am., Inc.*, 427 S.W.3d 511, 523 (Tex. App.—Fort Worth 2014, pet. denied) ("[A] party must have tendered a written instruction on the measure of damages in substantially correct

---

[6] At the charge conference, the trial court and the Velanis' counsel mentioned the parties had emailed proposed charges to the trial court. Nothing indicates whether any of these emailed charges is the same as the proposed charge in the clerk's record.

14

form to later complain on appeal about a damages question that omitted an instruction on the measure of damage."); *Elliott*, 2004 WL 2115420, at *11-12 (holding, because he offered no proposed written instruction, appellant failed to preserve complaint about lack of measure-of-damages instruction); *Fairfield Ests. L.P. v. Griffin*, 986 S.W.2d 719, 724 (Tex. App.—Eastland 1999, no pet.) ("Where the jury charge contains no instruction regarding the legal measure of damages, the complaining party must tender a written request in substantially correct form."); *see also Shawnee, Inc. v. Kaz Meyers Props., LLC*, No. 05-23-00507-CV, 2025 WL 1909391, at *10 (Tex. App.—Dallas July 10, 2025, no pet.) (mem. op.) (holding dictating proposed instruction into record did not preserve error); *Jarrin v. Sam White Oldsmobile Co.*, 929 S.W.2d 21, 25 (Tex. App.—Houston [1st Dist.] 1996, writ denied) ("Dictating a requested instruction to the court reporter is not sufficient to support an appeal based on the trial court's refusal to submit requested material.").

We overrule the Velanis' ninth issue.

### Evidentiary Challenge

In their eleventh issue, the Velanis contend that the trial court erred by admitting the testimony of Qasin Alhasan. Alhasan testified that, in August 2015, he owned some of the vehicles on the lot, which Naushad was selling for him on consignment. When Dhanji called Alhasan to testify, the Velanis objected that Alhasan was a "non-disclosed witness." Dhanji responded that he had not disclosed

Alhasan as a witness because he had learned of Alhasan's testimony only four days earlier. The trial court overruled the objection and permitted Alhasan to testify.

On appeal, the Velanis contend that the trial court erred in admitting Alhasan's testimony because he "was not disclosed to [them] and his testimony was a surprise and prejudicial." They assert that "the ownership of the vehicles and whether they were consigned [were] central to Dhanji's claim from the beginning of the lawsuit."

## A.    Applicable law

Whether to admit or exclude evidence is a matter committed to the trial court's sound discretion. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). The erroneous admission of evidence requires reversal "only if the error probably (though not necessarily) resulted in an improper judgment." *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004); *see* TEX. R. APP. P. 44.1(a).

To determine whether the trial court's error in admitting evidence was harmful, we "review the entire record, and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted." *Armstrong*, 145 S.W.3d at 144; *see Jackson v. Takara*, 675 S.W.3d 1, 6 (Tex. 2023). "[T]he erroneous admission of cumulative evidence or evidence that does not control a material and dispositive issue is generally harmless and thus does not require reversal of the trial court's judgment." *Jackson*, 675 S.W.3d at 6 (citing *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989)). "In evaluating

16

whether erroneously admitted evidence is harmless, we review the entire record, considering, in particular, the state of the evidence, the strength and weakness of the case, and the verdict." *Id.* (internal quotation marks omitted).

**B.    Analysis**

Considering the entire record, we conclude that the admission of Alhasan's testimony, even if erroneous, did not constitute harmful, reversible error. Alhasan's testimony showed that Naushad did not own all the vehicles on the lot because some cars—the vehicles belonging to Alhasan—were on consignment. This testimony was cumulative of Pajooh's testimony that Naushad told him that the some of the cars on the lot were on consignment. Thus, the testimony, even if erroneously admitted, was harmless. *See Armstrong*, 145 S.W.3d at 144 ("Clearly, erroneous admission is harmless if it is merely cumulative.").

The Velanis' assertion that Alhasan's testimony played a pivotal role in the case is also without support in the record. The primary dispute between the parties was whether Naushad misrepresented that all the vehicles on the lot were part of the vehicle inventory included in the business's assets that Dhanji was purchasing. Whether Naushad owned all the vehicles on the lot was not central to proving that Naushad misrepresented what was included in the vehicle inventory. To prove that Naushad mispresented the inventory, Dhanji relied primarily on his own testimony, the Contract, and other documents such as photographs of the vehicles on the lot.

17

The Velanis defended against Dhanji's claims by offering evidence to support their assertion that Naushad never represented that all the cars on the lot were part of the inventory being sold. They claimed that the vehicles included in the purchased inventory were only the vehicles listed in the inventory given to Dhanji and that the vehicles on the list were the vehicles that Dhanji received.

Notably, in their closing argument, the Velanis acknowledged that there were consigned vehicles on the lot. They argued that, because the Contract was signed on July 28, 2015, Alhasan's cars, consigned in August 2015, could not have been part of the purchased inventory. They also asserted that the vehicles listed in the inventory, which they claimed was attached to the Contract, were the vehicles that Dhanji received at the end of August, and those vehicles did not include any consigned vehicles. In other words, the Velanis asserted that the fact that the lot had consigned vehicles did not undermine their defense to Dhanji's claim that Naushad had represented that all the vehicles on the lot were included in the asset sale.

We conclude that the record does not support the Velanis' assertion that the admission of Alhasan's testimony probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a). We hold that the trial court's error in admitting Alhasan's testimony, if any, was harmless error. *See id.*

We overrule the Velanis' ninth issue.

18

**Award of Contractual Damages and Attorney's Fees**

The trial court's judgment awarded Dhanji the contractual damages and trial-level attorney's fees found by the jury against Naushad's Estate, Rosharana, and Rozmin based "on the claim" that Naushad, Rosharana, and Rozmin "were part of a conspiracy that damaged [Dhanji] in breach of the agreement." In their thirteenth and fifteenth issues, the Velanis assert that the award of those damages and attorney's fees "cannot withstand scrutiny because [the award] is based on a claim of a conspiracy for breach of contract liability which has no basis in Texas law."

## A. Applicable law

Rule of Civil Procedure 301 provides that a trial court's judgment "shall conform to the pleadings, the nature of the case proved and the verdict, if any," meaning that a trial court should enter its judgment consistent with the jury's findings. TEX. R. CIV. P. 301; *see R3Build Constr. Servs., LLC v. Drayden*, No. 01-20-00144-CV, 2022 WL 3452436, at *10 (Tex. App.—Houston [1st Dist.] Aug. 18, 2022, no pet.) (mem. op.). Besides conforming to the pleadings and the jury's verdict, the judgment must reflect a correct application of the law to determine the effect of the verdict. *R3Build Constr. Servs.*, 2022 WL 3452436, at *10; *Salomon v. Lesay*, 369 S.W.3d 540, 554 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

Here, the Velanis' thirteenth and fifteenth issues raise the question of whether the trial court correctly applied the law regarding civil conspiracy to the jury's

verdict. *See R3Build Constr. Servs.*, 2022 WL 3452436, at *10. We review de novo the question of whether the trial court complied with Rule of Civil Procedure 301. *See id.*

Civil conspiracy is a theory of liability that allows an injured party to recover damages from a tortfeasor's co-conspirators. *See Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140–42 (Tex. 2019). It is not an independent tort but is a theory of vicarious liability "that imparts joint-and-several liability to a co-conspirator who may not be liable for the underlying tort." *Id.* at 140. "Civil conspiracy requires an underlying tort that has caused damages." *Id.* at 142 (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)); *see 1st & Trinity Super Majority, LLC v. Milligan*, 657 S.W.3d 349, 372 (Tex. App.—El Paso 2022, no pet.) ("[T]o prevail on a civil conspiracy claim, a plaintiff must show that the defendant was liable for some underlying tort.").

A plaintiff can recover damages on a civil-conspiracy finding when the jury makes an affirmative finding on another tort supported by the evidence, even when the conspiracy question was not predicated on another tort finding. *See Chu v. Hong*, 249 S.W.3d 441, 444 & n.4 (Tex. 2008); *In re T.A.Q.*, No. 14-17-00954-CV, 2019 WL 1186829, at *3 (Tex. App.—Houston [14th Dist.] Mar. 14, 2019, pet. denied) (mem. op.). But, if there is no other tort finding, a plaintiff cannot recover damages on a conspiracy finding. *See Guardian Transfer & Storage Inc. v. Behrndt*, No. 14-

14-00635-CV, 2016 WL 1267911, at \*5 (Tex. App.—Houston [14th Dist.] Mar. 31, 2016, no pet.) (mem. op.) (holding that plaintiff could not prevail on jury's conspiracy finding when question was not conditioned on any other tort finding and other submitted tort claims were either rejected by jury or failed as matter of law).

"[I]n modern usage a tort is simply a 'civil wrong, *other than breach of contract*, for which a remedy may be obtained.'" *Agar*, 580 S.W.3d at 141 (quoting Tort, BLACK'S LAW DICTIONARY (10th ed. 2014) (emphasis added)); *see Amey v. Barrera*, No. 13-01-00130-CV, 2004 WL 63588, at \*8 (Tex. App.—Corpus Christi–Edinburg Jan. 15, 2004, no pet.) (mem. op.) ("[B]reach of contract is not a tort."). Courts have held that a party cannot be held liable for conspiracy to breach a contract. *See 1st & Trinity Super Majority*, 657 S.W.3d at 371 ("[B]ecause a claim for breach of contract is not a tort, a claim that an individual assisted or aided and abetted in another individuals' breach of contract is not actionable."); *Grizzle v. Tex. Com. Bank, N.A.*, 38 S.W.3d 265, 285 (Tex. App.—Dallas 2001), *rev'd in part on other grounds*, 96 S.W.3d 240 (Tex. 2002) (affirming summary judgment for conspiracy-to-breach-contract claim "[b]ecause breach of contract is not a tort [and] will not support a civil conspiracy"); *see also Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 463 (5th Cir. 2003) (affirming district court's summary judgment on conspiracy claim because "a conspiracy to breach a contract is not actionable under Texas law").

21

## B.    Analysis

The jury found that Naushad failed to comply with the Contract and that $150,000 in damages would fairly and reasonably compensate Dhanji for the noncompliance.  Because it found that Naushad failed to comply with the Contract, the jury was asked to find Dhanji's reasonable and necessary attorney's fees.  The jury awarded Dhanji $50,683.75 for trial-level attorney's fees.  The jury also found that each defendant was part of a conspiracy that damaged Dhanji.

The trial court's judgment holds Rosharana and Rozmin vicariously liable for the breach-of-contract damages and trial-level attorney's fees based "on the claim" that they "were a part of a conspiracy that damaged [Dhanji] in breach of the agreement."  But as discussed, breach of contract is not a tort, and Rosharana and Rozmin cannot be held vicariously liable for contractual damages and attorney's fees based on the jury's conspiracy findings.[7]  *See Agar*, 580 S.W.3d at 140–42.  Thus, the trial court erred in awarding $150,000 in breach-of-contract damages and

---

[7]    We note that the conspiracy questions in the jury charge were not predicated on a jury finding of another tort.  That meant that Dhanji could recover on a conspiracy jury finding if the jury made an affirmative finding on another tort supported by the evidence, such as his fraud claim.  *See Chu*, 249 S.W.3d at 444 & n.4; *In re T.A.Q.*, 2019 WL 1186829, at *3.  But the lack of predication did not mean that Dhanji could recover damages on the jury's conspiracy findings based on the jury's affirmative findings on his breach-of-contract claim because "conspiracy requires an underlying tort that has caused damages."  *See Agar*, 580 S.W.3d at 142.

22

$50,683.75 in attorney's fees against Rosharana and Rozmin.[8] *See 1st & Trinity Super Majority*, 657 S.W.3d at 371; *Grizzle*, 38 S.W.3d at 285; *see also Leasehold Expense Recovery*, 331 F.3d at 463.

The trial court also erred in awarding the contractual damages and attorney's fees against Naushad's Estate based on conspiracy. In his brief, Dhanji concedes that he was not entitled to recover damages from Naushad's Estate based on "[a] conspiracy to breach a contract to which Naushad was a party." *See San Saba Energy, L.P. v. McCord*, 167 S.W.3d 67, 73 (Tex. App.—Waco 2005, pet. denied) ("[I]n Texas a party to a contract may not sue another party to the contract for conspiracy to breach the contract."). However, Dhanji also asserts that he is entitled to recover contractual damages and trial-level attorney's fees against Naushad's Estate based on the jury's affirmative breach-of-contract findings. We agree.

As noted, Rule of Civil Procedure 301 required the trial court to render its judgment in accordance with the jury's findings. *See* TEX. R. CIV. P. 301. As found by the jury, the trial court should have awarded Dhanji the contractual damages and

---

[8]     Dhanji argues that Rosharana and Rozmin can be held liable based on the jury's conspiracy findings because the evidence showed that Naushad "misrepresented what was to be conveyed by the [contract] with the assistance and agreement of his co-conspirators," Rosharana and Rozmin. (Emphasis omitted). The evidence Dhanji cites was offered to prove that the defendants conspired to commit fraud, a tort. *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (material misrepresentation is element fraud claim). The Velanis do not dispute that Texas law permits a plaintiff to recover from co-conspirators jointly and severally for fraud.

attorney's fees against Naushad's Estate based on Dhanji's breach-of-contract claim. *See* TEX. R. CIV. P. 301; *R3Build Constr. Servs.*, 2022 WL 3452436, at \*10.

We sustain Dhanji's thirteenth and fifteenth issues to the extent that they challenge the award of contractual damages and attorney's fees based on conspiracy. To conform the award to the jury's verdict, we modify the judgment to omit the award of $150,000 in contractual damages and $50,683.75 in attorney's fees against Naushad's Estate, Rosharana, and Rozmin based on conspiracy and to award those contractual damages and attorney's fees to Dhanji against only Naushad's Estate based on the jury's breach-of-contract findings. *See* TEX. R. CIV. P. 301; *see also* TEX. R. APP. P. 43.2(b) (providing appellate court may modify trial court's judgment and affirm as modified); *Monk v. Pomberg*, 263 S.W.3d 199, 208 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("A court of appeals is empowered to modify the judgment in accord with the findings of the trial court, when there is a conflict between the finding and the judgment of the trial court."); *Law Offices of Windle Turley, P.C. v. French*, 140 S.W.3d 407, 415 (Tex. App.—Fort Worth 2004, no pet.) (modifying trial court's judgment "to conform the damages award in the judgment to the jury's verdict").

**Double Recovery of Damages**

In their twelfth issue, the Velanis assert that the trial court's award of both breach-of-contract damages and fraud damages to Dhanji was "an impermissible double recovery [of damages] for the same injury."

## A.    Applicable law

"A double recovery exists when a plaintiff obtains more than one recovery for the same injury." *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998).  The one-satisfaction rule prohibits a plaintiff from recovering more than once for a single injury.  *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex. 2006); *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000); *see also TMRJ Holdings, Inc. v. Inhance Techs., LLC*, 540 S.W.3d 202, 208 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("Under the one-satisfaction rule, a plaintiff is entitled to only one recovery for any damages suffered because of a particular injury.").  "There can be but one recovery for one injury, and the fact that more than one defendant may have caused the injury or that there may be more than one theory of liability, does not modify this rule." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 8 (Tex. 1991).

The one-satisfaction rule applies when multiple defendants commit the same act as well as when defendants commit technically different acts that result in a single injury. *Casteel*, 22 S.W.3d at 390.  The fundamental consideration in applying

the one-satisfaction rule is whether the plaintiff has suffered a single, indivisible injury—not the causes of action the plaintiff asserts. *See Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 107, 110 (Tex. 2018). "The one satisfaction rule may limit a plaintiff's recovery even where the amounts awarded vary from claim to claim." *Lundy v. Masson*, 260 S.W.3d 482, 506 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

"When a defendant's acts result in a single injury, and the jury returns favorable findings on more than one theory of liability, the plaintiff is entitled to judgment on the theory affording him the greatest relief." *Saden v. Smith*, 415 S.W.3d 450, 465–66 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (citing *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 367 (Tex. 1987)). Ordinarily, the prevailing party will elect which remedy it prefers before rendition of judgment, but when he does not, the trial court should use the findings to render judgment affording the maximum relief. *Star Houston, Inc. v. Shevack*, 886 S.W.2d 414, 422 (Tex. App.—Houston [1st Dist.] 1994), *writ denied per curiam*, 907 S.W.2d 452 (Tex. 1995). If the prevailing party failed to make that election, the trial court should use the findings to afford the greater recovery and render judgment accordingly. *Birchfield*, 747 S.W.2d at 367. And, if the trial court failed to do so, the appellate court must modify the trial court's judgment to effectuate the election. *See Lundy*, 260 S.W.3d at 506; *Star Houston*, 886 S.W.2d at 423.

**B.    Analysis**

The jury found $150,000 in damages for Dhanji's breach-of-contract claim and found $67,500 in damages for his fraud claim. In the judgment, the trial court awarded Dhanji the damages for both claims and attorney's fees. On appeal, the Velanis assert that Dhanji may not recover the amounts awarded for both claims because the damages awarded were for the same injury. We agree.

To support his breach-of-contract claim, Dhanji offered evidence showing that Dhanji agreed to purchase the assets of Naushad's used-car business and that Naushad agreed to transfer the assets to Dhanji after certain payments were made. Dhanji paid Naushad $175,000 by check, plus approximately $8,500 from the August sales proceeds, but Naushad failed to transfer the contracted-for assets to Dhanji. During closing arguments, Dhanji asked the jury to award him contractual damages of $183,500—"$175,000 plus the little bit of amount they got credited against the sales in August."[9]

_____

[9]    To the extent the Velanis challenge the legal sufficiency of the evidence supporting the jury's $150,000 damages award, we hold the evidence is sufficient. Dhanji testified that in late August 2015, he arrived at the business to find the office lock broken, and the office furniture and equipment, keys to the vehicles, and operable vehicles missing. Dhanji learned that the missing operable vehicles were at Naushad's new location. Dhanji testified that only inoperable vehicles remained which had no value. Based on this evidence, the jury could have reasonably found that the difference between the amount Dhanji paid for the contracted-for assets and the value he received was $150,000. *See Amigos Meat Distribs., L.P. v. Guzman*, 526 S.W.3d 511, 517 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("Evidence is legally sufficient if it 'would enable reasonable and fair-minded

To support his fraud claim, Dhanji offered evidence showing that Naushad represented that the sale would include certain assets, including the operable vehicles on the lot, but Naushad had no intention of delivering the assets. Relying on the representations, Dhanji signed the contract and paid Naushad. Naushad's representations and the Contract addressed the same subject-matter—Dhanji's purchase of the business's asset. The misrepresentations did not involve matters collateral to the agreement. Dhanji did not present evidence that he suffered separate and distinct injuries resulting from the alternate liability theories of breach of contract and fraud, nor did he ask the jury to award different damages for each claim.

Although the jury made positive findings on more than one theory of liability, the record shows that Dhanji suffered a single injury—his financial loss resulting from Naushad's failure to transfer the business assets to him as agreed. *See Pollitt v. Comput. Comforts, Inc.*, No. 01-17-00067-CV, 2018 WL 4780800, at *2 (Tex. App.—Houston [1st Dist.] Oct. 4, 2018, no pet.) (mem. op.) (determining plaintiff suffered single injury when there was no evidence or argument that plaintiff suffered separate and distinct injuries resulting from alternate theories of breach of contract and fraud). Because he suffered a single injury, Dhanji cannot recover an award of

people to reach the verdict under review.'" (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

28

both contractual and fraud damages.[10] *See Chapa*, 212 S.W.3d at 303; *Sterling*, 822 S.W.2d at 8; *see also Pollitt*, 2018 WL 4780800, at *2 (applying one-satisfaction rule to fraudulent-inducement and breach-of-contract claims). The trial court erred by awarding both damages amounts. Because the jury's award of $150,000 in damages plus attorney's fees for Dhanji's breach-of-contract claim provides a greater recovery than the jury's award of $67,500 for his fraud claim, we modify the trial court's judgment by deleting the award of fraud damages. *See Lundy*, 260 S.W.3d at 506; *Star Houston*, 886 S.W.2d at 423.

We sustain the Velanis' twelfth issue.[11]

## Conversion Counterclaim

When asked whether Dhanji converted Naushad's motorcycle, the jury responded, "No." In their second issue, the Velanis challenge the legal sufficiency of the evidence to support the jury's rejection of their conversion counterclaim.

---

[10] Because the one-satisfaction rule applies to the fraud claim, the rule also applies to the civil conspiracy claim against the Velanis "because (1) as a derivative tort, the injury resulting from the conspiracy is the same as the injury resulting from the underlying tort and (2) the damages resulting from the conspiracy are based on the damages resulting from the commission of the underlying tort." *Brewer & Pritchard, P.C. v. AMKO Res. Int'l, LLC*, No. 14-13-00113-CV, 2014 WL 3512836, at *4 n.6 (Tex. App.—Houston [14th Dist.] July 15, 2014, no pet.) (mem. op.) (citing *Hart v. Moore*, 952 S.W.2d 90, 98 (Tex. App.—Amarillo 1997, pet. denied)).

[11] Given the disposition of the preceding issues, we need not address the Velanis' other issues challenging the award of damages and attorney's fees to Dhanji. *See* TEX. R. APP. P. 47.1 (providing court of appeals must address "every issue raised and necessary to final disposition of the appeal").

29

## A. Standard of review

When, as here, a party attacks the legal sufficiency of an adverse finding on an issue on which he bears the burden of proof, the judgment must be sustained unless the record conclusively establishes all vital facts in support of the issue. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). To conclusively establish a fact, the evidence must leave no room for ordinary minds to differ as to the conclusion to be drawn from it. *Cath. Diocese of El Paso v. Porter*, 622 S.W.3d 824, 834 (Tex. 2021).

In our legal-sufficiency review, we consider the evidence in the light most favorable to the trial court's judgment and indulge every reasonable inference that supports it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We are also mindful that jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819.

## B. Analysis

Conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. *Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 684 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). To establish a claim for conversion, a plaintiff must establish that (1) he owned or had possession of the property or entitlement to possession, (2) the defendant unlawfully and without

30

authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner, (3) the plaintiff demanded return of the property, and (4) the defendant refused to return the property. *Id.*

The second element of conversion required the Velanis to prove that Dhanji exercised dominion and control over the motorcycle in an unlawful and unauthorized manner.[12] *See id.* The record does not conclusively establish this element.

The evidence showed that Naushad acquired the motorcycle on July 7, 2015. The motorcycle was titled under one of Naushad's assumed business names—Texas Motor Cars. The Contract, signed three weeks later, provided that Naushad agreed to sell certain assets of his used-car business to Dhanji. The Contract defined "Assets" as "[a]ll equipment used in carrying on the Business" and "[a]ll inventory and packaging." The Contract did not define "inventory," and Dhanji testified that no inventory list was attached to the Contract.

The Contract stated that the Assets did not include "Excluded Assets," defined as "computers, table in 3rd office, refrigerator, cold water dispenser, all signage, all paperwork, phone numbers & all personal property[,] . . . [a]ny and all DBAs, [a]ll

---

[12] Regarding this element, the trial court instructed the jury to consider whether Dhanji "assumed and exercised dominion and control over the motorcycle in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the rights of [Naushad] Velani."

31

Licenses, [and] Permits under current business owner's name." The motorcycle was not identified as an Excluded Asset.

Dhanji testified that the motorcycle was part of the inventory he purchased. He explained, "According to our conversation and all the agreements, we were told that the entire lot, everything that is parked in my lot is mine and that includes [the] bike because [Naushad] left it on August 29th."

The Velanis assert that the evidence showed that the motorcycle was not part of the asset purchase. They point out that Dhanji admitted that, on the day the Contract was signed, Naushad gave him an inventory list of vehicles that he would receive, and the motorcycle was not on the list. However, the list was provided to Dhanji after the contract was signed, and Dhanji described it as a "sample list." Dhanji did not agree that the list contained all the vehicles he contracted to buy.

The Velanis also point to Dhanji's discovery responses as evidence that Dhanji's control of the motorcycle was unauthorized. In his responses, Dhanji admitted that he took possession of the motorcycle and obtained bonded title for it. Dhanji stated, "Like other non-operable vehicles, [the motorcycle] was left in our lot for a long time and no one claimed . . . ownership." Dhanji also stated that he would return the motorcycle if he was paid "[the] storage fees, towing charges and the money [he] spent on fixing the motorcycle."

32

The discovery responses show that Dhanji took control of the motorcycle, but they do not conclusively establish that the control was unauthorized. *See id.* The Velanis assert that Dhanji's offer to return the motorcycle to Naushad in exchange for payment of his expenses was an admission that his possession of the motorcycle was unauthorized, but the jury may have viewed the evidence differently. They may have reasonably inferred that Dhanji's offer to return the motorcycle was an offer to resolve the conversion claim without further litigation of the issue.

The discovery responses also highlight that, like the other vehicles Naushad left on the lot, the motorcycle was inoperable. The Velanis asserted that the vehicles Naushad left on the lot were the vehicles comprising the inventory that Dhanji purchased. The Velanis also claimed that the operable vehicles that Naushad removed from the lot were not part of the purchased inventory. Yet, Naushad did not take the motorcycle. The jury may have reasonably inferred that this indicated that Naushad intended to transfer the motorcycle to Dhanji like the other inoperable vehicles on the lot.

Given the record, we conclude that the Velanis did not conclusively establish all vital facts to prove conversion; namely, they failed to conclusively show that Dhanji's dominion and control over the motorcycle was unlawful or unauthorized. *See id.* Accordingly, we hold that the evidence was legally sufficient to support the

trial court's judgment on the conversion counterclaim. *See Shields Ltd. P'ship*, 526 S.W.3d at 480.

We overrule the Velanis' second issue.

**Attorney's Fees**

Finally, we address the Velanis' claim that they were entitled to recover their attorney's fees under the Texas Theft Liability Act (TTLA). At the charge conference, the Velanis asserted that they prevailed on Dhanji's "theft by trick" claim, which they asserted was a TTLA claim.[13] They objected that the charge did not contain an attorney's fees question for them based on the TTLA, and they read their proposed attorney's fees question into the record. They pointed out that the TTLA provides that the party who prevails on a TTLA claim receives their attorney's fees. They asserted that they prevailed on the claim because Dhanji stated on the record that he had no objections to the charge, which lacked a theft liability question. The trial court overruled their objection and refused their proposed question. In their first issue, the Velanis contend that the trial court erred in doing so.

## A.    Standard of review and applicable law

We review alleged charge error for abuse of discretion. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or, in other words, when the

---

[13]    For our purposes, we will assume Dhanji's "theft by trick" claim is a TTLA claim.

act is arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

A party who prevails on a TTLA claim is entitled to recover its court costs and reasonable and necessary attorney's fees. TEX. CIV. PRAC. & REM. CODE § 134.005(a). A prevailing party includes both a plaintiff who successfully prosecutes a theft suit and a defendant who successfully defends against one. *Arrow Marble, LLC v. Estate of Killion*, 441 S.W.3d 702, 706 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see Int'l Med. Ctr. Enters., Inc. v. ScoNet, Inc.*, No. 01-16-00357-CV, 2017 WL 4820347, at *16 (Tex. App.—Houston [1st Dist.] Oct. 26, 2017, no pet.) (mem. op.) ("A defendant who defeats a TTLA claim is a prevailing party and can recover attorney's fees even if it did not recover actual damages."). "A defendant 'prevails' when the plaintiff loses with prejudice, whether on the merits or for some other reason." *Agar*, 580 S.W.3d at 148.

## B. Analysis

The Velanis assert that they prevailed on the theft claim because Dhanji "nonsuited" the claim by stating at the charge conference that he had no objections to the charge, which lacked a theft liability question. To show that the "nonsuit" was with prejudice, they rely on *Epps v. Fowler*, 351 S.W.3d 862 (Tex. 2011).

In *Epps*, the supreme court recognized that a defendant is generally not a prevailing party when the plaintiff nonsuits its claims without prejudice. *See id.* at

35

869; *Bacon Tomsons, Ltd. v. Chrisjo Energy, Inc.*, No. 01-15-00305-CV, 2016 WL 4217254, at *12 (Tex. App.—Houston [1st Dist.] Aug. 9, 2016, no pet.) (mem. op.). However, the *Epps* court held that "a defendant may be a prevailing party when a plaintiff nonsuits without prejudice if the trial court determines, on the defendant's motion, that the nonsuit was taken to avoid an unfavorable ruling on the merits." 351 S.W.3d at 870. In their briefing, the Velanis assert, "This was exactly what Dhanji did—non-suited his theft claim to avoid an unfavorable outcome by the jury."

The Velanis' argument fails for two reasons. First, Dhanji did not "nonsuit" the theft claim. Rule of Civil Procedure 162 permits a plaintiff to "dismiss a case[] or take a nonsuit" before he "has introduced all of his evidence other than rebuttal evidence." TEX. R. CIV. P. 162. "Strictly speaking, a Rule 162 nonsuit applies to a dismissal of the *entire* case"—not a single claim as the Velanis assert here.[14] *C/S Sols., Inc. v. Energy Maint. Servs. Grp. LLC*, 274 S.W.3d 299, 304 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Also, Dhanji's statement that he did not object to the trial court's charge was made after the close of evidence at the charge conference.[15] *See id*. Second, the Velanis did not obtain a determination by the trial

---

[14] *Compare* TEX. R. CIV. P. 162 ("At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit . . . .") *with* TEX. R. CIV. P. 165 ("A party who abandons any part of his claim or defense, as contained in the pleadings, may have that fact entered of record, so as to show that the matters therein were not tried.").

[15] We note that, although Rule 162 requires a nonsuit to be filed before the close of evidence, a trial court may grant a plaintiff's nonsuit after that point "in its sound

36

court, as required by *Epps*, that Dhanji "nonsuited" the theft claim to avoid an unfavorable ruling, as they claim. *See Epps*, 351 S.W.3d at 870; *see, e.g.*, *TLC CEC Parkdale, LLC v. Trevino*, No. 13-20-00382-CV, 2022 WL 3652500, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 25, 2022, no pet.) (mem. op.) (overruling appellant's issue that trial court erred in not awarding attorney's fees to appellant as "prevailing party" under TTCA because "[t]here [was] no ruling from the trial court concluding that [plaintiff] nonsuited his case to avoid an unfavorable ruling."); *Int'l Med. Ctr. Enters.*, 2017 WL 4820347, at *16 (ruling defendant was not entitled to attorney's fees under TTLA "[i]n light of the lack of a trial court finding on [plaintiff's] motive for nonsuiting its TTLA claim").

We conclude the Velanis' argument—that Dhanji non-suited his theft claim to avoid an unfavorable outcome by the jury—does not support their assertion that they prevailed on the theft claim. Unless they prevailed on the claim, they were not

---

discretion." *M & E Endeavours LLC v. Cintex Wireless LLC*, No. 01-15-00234-CV, 2016 WL 1590642, at *5 (Tex. App.—Houston [1st Dist.] Apr. 19, 2016, no pet.) (mem. op.) (holding trial court did not abuse discretion in permitting counter-plaintiff to nonsuit counterclaims without prejudice two days after it rested its case, but before trial court read charge to jury, because counter-plaintiff learned late in trial that it may have claims against additional party); *see, e.g.*, *Sustainable Tex. Oyster Res. Mgmt., L.L.C. v. Hannah Reef, Inc.*, 623 S.W.3d 851, 874–75 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (holding trial court did not abuse its discretion in permitting one of several plaintiffs to non-suit his claims without prejudice after close of evidence because plaintiff did not participate at trial and recovered nothing in trial court's judgment); *see also O'Brien v. Stanzel*, 603 S.W.2d 826, 828 (Tex. 1980) ("We do not hold that there are no situations in which a trial court may exercise discretion even though the trial has progressed beyond the rule's point of no return . . . .").

entitled to attorney's fees under the TTLA. *See* TEX. CIV. PRAC. & REM. CODE § 134.005(b). The Velanis offer no alternative theories to support their assertion that they prevailed. Thus, they have not shown that the trial court abused its discretion by not submitting an attorney's fees question for them based on the TTLA.

We overrule the Velanis' first issue.

## Conclusion

We modify the trial court's judgment to (1) omit the award of $150,000 in contractual damages and $50,683.75 in attorney's fees based on conspiracy, (2) award those contractual damages and attorney's fees to Dhanji against only Rozmin, as the personal representative of Naushad's Estate, based on the jury's breach-of-contract findings, and (3) omit the award of $67,500 in fraud damages. We affirm the judgment as modified.


                                        Andrew Johnson
                                        Justice

Panel consists of Justices Guerra, Guiney, and Johnson.